Joe Garry KILBURN, Appellant,

v.

The STATE of Texas, Appellee.

No. 45760.

Court of Criminal Appeals of Texas.

Feb. 21, 1973.

John J. C. O'Shea, Lubbock, for appellant.

Blair Cherry, Jr., Dist. Atty., Richard D. Monroe, Asst. Dist. Atty., Lubbock, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

The conviction is for the sale of Lysergic Acid Diethylamide, a dangerous drug; the punishment ten years imprisonment.

In one ground of error the appellant asserts that "the trial court erred in failing to rule and find that the appellant was entrapped in the commission of the alleged offense, as a matter of law."

■ Jimmy R. Mull testified that, while acting as an undercover agent for the Texas Department of Public Safety, he, accompanied by Eddie Dodson, an acquaintance of the appellant, was driving past the

house of the appellant's parents in Lubbock when they saw the appellant in the yard and stopped to talk with him. The appellant came out to their car and got in the back seat. The appellant was introduced to the agent by Dodson, who told the appellant that the agent was "cool." The appellant then told them that he had lost some "speed" in his car and had been looking for it. The appellant then produced a tin box of fifteen or twenty pills in it which he said were "speed" and asked Dodson and the agent if they wanted some. He was told they did not. The appellant was smoking a pipe which he said contained marihuana and opium. Mull and Dodson declined the appellant's offer to let them smoke the pipe. After some discussion concerning the appellant just getting out of jail, he asked the agent and Dodson if they knew anyone who wanted to buy thirty or forty "hits" of LSD. The agent said that he would like to buy forty "hits" of LSD and the appellant said that he would sell that quantity for forty-five dollars. The agent agreed and was told to come back at 3 P.M. The agent did come back at 3 P.M. but was given a message by the appellant's mother to come back later. The appellant then reported some difficulty in obtaining the LSD and arranged to meet the agent still later that evening in a parking lot. The agent and the appellant met at the appointed place and the appellant laid a field jacket on the car seat and poured out a number of orange tablets which he called "orange sunshine." There were thirty-seven tablets which the agent replaced in the small plastic bag.

This evidence obviously does not show entrapment as a matter of law.

"It is the general rule that where the criminal intent originates in the mind of an accused, the fact that the officers furnish the opportunity for or aid the accused in the commission of a crime constitutes no defense to such a prosecution. However, if the criminal design originates in the mind of the officer and he induces a person to commit a crime which he would not otherwise have committed except for such inducement, such is entrapment and, in law, may constitute a defense." Sutton v. State, 170 Tex. Cr.R. 617, 343 S.W.2d 452 (1961).

See also Jones v. State, 427 S.W.2d 616 (Tex.Cr.App.1968); Mistrot v. State, 471 S.W.2d 831 (Tex.Cr.App.1971) and Vera v. State, 473 S.W.2d 22 (Tex.Cr.App.1971).

The appellant's own testimony raised the issue of entrapment and such a charge was submitted to and rejected by the jury. See Sutton v. State, supra; Jones v. State, supra.

■ The appellant next complains that "the trial court erred in admitting prosecution exhibit number one because the prosecution failed to prove an adequate chain of custody."

The appellant concedes that the Department of Public Safety chemist, John R. McCutcheon's testimony "authenticated" the tablet introduced as part of exhibit number one, as being "the same tablets upon which he performed his chemical analysis." The chemist testified that one of the thirty-seven tablets, which he had selected at random from the group, had been consumed in his analysis to determine its chemical composition.

The appellant argues specifically that because of the "absent testimony by the mail clerk who received the envelope and the chemist who opened such envelope, the state has failed to establish an adequate chain of custody as to such exhibit."

Mull, the undercover agent, identified state's exhibit number one as being a brown manila envelope which he mailed to the Texas Department of Public Safety Chemistry Laboratory in Austin. Inside the brown envelope was a white envelope. The agent said he had placed on the white envelope the name Joe Kilburn—age approximately thirty—sale and possession of a dangerous drug—the date of the offense —the location, Lubbock—he noted that the

white envelope contained a plastic bag containing thirty-seven orange tablets—LSD. He had then signed the white envelope and placed thereon his Department of Public Safety identification number. Mull then placed the plastic bag with the thirty-seven tablets into the white envelope, sealed it, placed the white envelope in the brown envelope, sealed it, and mailed them to Austin. Upon viewing the tablets while he was testifying, he said they appeared to be the same as those sold to him by appellant and the ones he had sent to the laboratory for analysis.

Testimony showed that the sealed brown envelope was delivered to the Chemistry Laboratory of the Department of Public Safety in Austin by an unknown mail clerk. The chemist, McCutcheon, said of course he could not remember the specific delivery of this piece of evidence. He testified that when envelopes containing evidence arrived at the laboratory they were opened before all of the chemists present. The brown envelope would have been opened and the undercover agent's notes would be used in order to get information to open a file folder which was made up for the use of the laboratory. A case number would then be assigned and placed on the envelope. The case number in this instance was L–108012, placed on the envelope on May 3, 1971. The brown envelope would then be resealed with the white envelope still within it and placed in the vault in the laboratory. When McCutcheon was assigned the file in this case he obtained the envelope from the vault, unsealed it, selected one of the tablets and performed the chemical tests and analysis necessary. He then placed his name and the date on the envelope, sealed it and returned it to the vault. He later obtained this envelope from the vault and brought it to Lubbock when he came to testify in this case.

McCutcheon further testified that during working hours the vault door remained open while the twelve chemists, or some of them, were at work in the laboratory. When they were not present the vault would be closed. The evidence shows a chain of custody sufficient for its admission into evidence. Witt v. State, 475 S.W.2d 259 (Tex.Cr.App.1971); Walker v. State, 470 S.W.2d 669 (Tex.Cr.App.1971) and Andrews v. State, 436 S.W.2d 546 (Tex.Cr.App.1968).

The appellant also urges that the failure of the trial court to grant a mistrial was error after the prosecuting attorney had offered into evidence a written report which the undercover agent had made.

It appears that the defense counsel had been permitted to see the written report of the undercover agent prior to trial. Although he did not have a copy in his possession during the time he was cross-examining agent Mull, he appeared to be very familiar with the report and the information contained therein. During a vigorous cross-examination of Mull he interrogated him about many matters which the officer admitted had not been placed in his written report. Defense counsel inquired about other specific transactions, asking if "some forty-five out of fifty-seven or fifty-seven all told (cases) there is a number of high school children, are there not?"

Near the end of re-direct examination the prosecutor stated: "Your Honor, so as to not keep anything from the jury, I would join with defense counsel and jointly introduce or offer this statement drawn up—or this report drawn up by Mr. Mull and let the jury see it." Defense counsel's objection was "at this time, Your Honor, I move for mistrial. That is patently inadmissible, a document that cannot be cross-examined upon, it's a grandstand play and a highly reprehensible—." The court interrupted and stated that he would sustain the objection to the statement and would overrule the motion for mistrial.

 Prosecutors who offer offense reports and statements of their witnesses unless it is perfectly clear that such statements are admissible are risking reversal

for such tactics. Under the facts of this case we do not find it to be reversible error. The objections made by defense counsel were not upon proper grounds that the report would improperly bolster the witness's testimony. The appellant's counsel did not at first object and request that the court instruct the jury to disregard the prosecutor's offer of the report, but initially asked for a mistrial. The officer's report was not admitted and the assumed objection was sustained. No error is shown. Clark v. State, 449 S.W.2d 231 (Tex.Cr.App.1969) and Ward v. State, 474 S.W.2d 471 (Tex.Cr.App.1971).

The appellant in another ground of error complains of the court's failure to admit the testimony of three witnesses for impeachment purposes and numerous other reasons such as " . . . theory and modus operandi of Jimmy R. Mull and Eddie Dodson."

During the cross-examination of Mull, he denied that he had ever sold or given any narcotics or dangerous drugs to several named persons, and testified that he had not delivered any drugs that had come into his possession to anyone other than the Department of Public Safety personnel.

The testimony of three witnesses was offered who would have testified to having seen Mull deliver narcotics and dangerous drugs to persons other than Department of Public Safety personnel. These transactions shown by the bills of exception had no possible connection with the transaction for which the appellant was on trial.

■ This testimony was properly excluded by the trial court as this would have constituted impeachment on immaterial and collateral matters. When a witness is cross-examined on a collateral matter his answer cannot be subsequently contradicted by the party cross-examining.

■ The same testimony and related testimony was also offered to impeach Dodson. It was not admissible for this purpose as Dodson was a defense witness and it was not shown that the appellant was entitled to impeach his own witness by reason of surprise. See Art. 38.28, Vernon's Ann.C.C.P.

Under the record we find that the testimony of the three witnesses incorporated in the bills of exception was not admissible for any legitimate purpose.

■ The appellant's remaining ground of error is that "the trial court committed fundamental error in failing to dismiss the indictment against the appellant because the appellant was not arrested and taken before the magistrate at the time of the alleged offense which according to the indictment and the testimony of Mull, was a felony offense committed in the presence of a police officer."

Argument under this ground of error is a diatribe on the use of undercover agents and provocateurs and this matter is raised for the first time on appeal. The appellant directs the court's attention to the fact that the appellant was not immediately arrested by the officer and taken before a magistrate. Seventeen days elapsed between the time of the commission of the offense and the time the appellant was indicted. This ground of error is without merit. Baldwin v. State, 478 S.W.2d 476 (Tex.Cr.App. 1972); Montoya v. State, 464 S.W.2d 853 (Tex.Cr.App.1971) and see United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

The judgment is affirmed.

Opinion approved by the Court.