**Jimmy Cranfill POE, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 48914.**

Court of Criminal Appeals of Texas.

Sept. 18, 1974.

C. C. "Kit" Cooke, on Appeal only, Cleburne, for appellant.

Jim D. Vollers, State's Atty., and Lawrence J. Gist, Asst. State's Atty., Austin, for the State.

## OPINION

JACKSON, Commissioner.

The conviction was for unlawful possession of a narcotic drug, to-wit: marihuana. A jury having found appellant guilty of the offense, the court assessed punishment at ten (10) years' imprisonment.

The sufficiency of the evidence is not denied. In October, 1972, appellant and his co-defendant, Jimmy Goains, drove over 900 miles to Lima, Illinois, to harvest marihuana that was growing wild on "government land" near Lima. Appellant admitted that he had learned of the location of the marihuana in the summer of 1972 and that he and his brother had driven to Lima that August to inspect the field, though they had cut none at that time. The harvesting trip in October was the result of an agreement appellant had made with James Gilstrap, an undercover narcotics agent for the Texas Department of Public Safety, whereby appellant was to sell and deliver to Gilstrap 300 pounds of marihuana in Glen Rose. Appellant and Goains returned to Glen Rose from Lima with 10 burlap bags filled with marihuana. On October 27, 1972, they were arrested by Officer Gilstrap and other agents for possession of the marihuana. At the trial, appellant did not deny the unlawful possession, but asserted the affirmative defense of entrapment.

In his first ground of error, appellant complains that the trial court erred in holding that entrapment was not established as a matter of law. We disagree.

In October, 1972, James Gilstrap, acting in his capacity as an undercover narcotics agent, was investigating drug traffic in Somervell County. On the basis of information given him by an informant, Gilstrap had reason to believe that appellant was dealing in marihuana. Gilstrap attended a poker party at appellant's housetrailer on the outskirts of Glen Rose. During the course of the poker game, he went to the restroom. He testified that upon his return appellant met him in the hallway and said, "Man, you want to score some grass?" Gilstrap told appellant he did not want to discuss it while others were present but would talk to him later.

After the poker game broke up, appellant and Gilstrap talked further. Gilstrap testified:

"Q Now, I'll ask you whether or not an arrangement was made for you to purchase any marijuana from Mr. Poe?

"A That night?

"Q Yes.

"A He offered to sell me some that night, I didn't want to.

"Q All right, did you make arrangements then with Mr. Poe to meet again with him?

"A I talked with him—when that offer was made he wanted to know if I wanted to buy a pound and I told him I didn't want to go clear over there and drive back to Fort Worth for just one pound.

"Q All right, where were you referring to?

"A I understood he was going to Meridian to get it.

"Q   All right, sir.

"A   And, I hold him, you know, that I could handle more than a pound— 'How much do you have?'

"Q   All right, what did Mr. Poe say in answer to your question as to how much did he have?

"A   He asked me how much I wanted.

"Q   All right, then what did you say, if anything?

"A   I told him that depended on what the price was.

"Q   Did Mr. Poe discuss a price with you then?

"A   Yes, sir, he told me *that* that he normally sold it for seventy dollars a pound.

"He said, 'I can get you up to three hundred pounds,' and I asked him when he could do it and he said he could get it for me.

"I asked him how much it would be for a pound and he said, 'You're buying that much I'll let you have it for sixty a pound.'

"Q   What was your reply to the offer of the sixty dollar a pound price?

"A   I told him that was a pretty good offer."

   \*     \*     \*     \*     \*     \*

Later he testified:

"A   The first time he just asked me if I wanted to buy a pound and I told him I didn't want to talk about it there because I didn't know the people there and I would talk to him later.

"The second time he wanted to know if I wanted to score a pound and I told him I didn't want to go to just score a pount (sic) and he then asked howmuch (sic) I wanted and I asked him how much he and—how much he had and he told me he would get what I needed—about three hundred pounds.

"Q   Did you ask him for a specific amount?

"A   No, sir, I think the exact answer was about what the price was.

"Q   Did you then make an offer or a price to him?

"A   No, he said he could let me have three hundred pounds at sixty dollars and I said that was a pretty good price."

Appellant took the stand in his own defense and testified that he did not approach Officer Gilstrap with an offer to sell marihuana but that Gilstrap approached him with the idea first. He testified that, at that time, the agent knew of appellant's knowledge of the wild marihuana growing in Illinois and induced appellant into the agreement to sell by offering him several thousands of dollars. Appellant stated that until he was approached by Gilstrap he had never thought of selling marihuana to anyone.

Appellant argues that Officer Gilstrap's testimony amounts to an admission that he solicited the entire amount of marihuana involved in this case except one pound; that, therefore, entrapment is shown as a matter of law; if not as to the entire quantity of marihuana appellant unlawfully possessed, then, at least, there was entrapment as to the quantity he possessed above one pound. Appellant's argument is without merit.

■   Assuming that Officer Gilstrap's testimony amounted to an admission of "partial entrapment" as to the quantity of marihuana appellant possessed when arrested, we fail to see how that fact could be a defense to the particular offense appellant was convicted of. Appellant was charged under Article 725b, Vernon's Ann.P.C., with possession of a narcotic drug. That statute does not require any particular quantity of the unlawful drug to

be present for a conviction to lie. Appellant would be as guilty of the offense if he possessed one pound as if he possessed 300 pounds. The amount or quantity of the drug appellant possessed would be a circumstance in mitigation of punishment, but would be no defense at the guilt stage of the trial.

The appellant's trial commenced after the effective date of the Texas Controlled Substances Act and appellant elected to be punished under the penalty provisions of that act as authorized by Section 6.01(c), Texas Controlled Substances Act, Vernon's Ann.Civ.St., Art. 4476–15. Under Section 4.05(b)(1) intentional possession of more than four ounces of marihuana is a felony of the third degree. Section 4.01(b)(3) of the act provides that a person adjudged guilty of a felony of the third degree shall be punished by imprisonment for a term of not more than 10 years or less than 2 years. That is the maximum term of imprisonment that may be assessed against a defendant for unlawful possession of marihuana under the Texas Controlled Substances Act. Assuming that appellant's possession of more than one pound of marihuana was the result of improper inducement on the part of Officer Gilstrap, he would still have intentionally possessed enough marihuana to authorize the imposition of a penalty of 10 years.

■ Further, we find that entrapment as a matter of law was not shown in any sense at all by the officer's testimony.

"It is the general rule that where the criminal intent originates in the mind of the accused, the fact that the officers furnish the opportunity for or aid the accused in the commission of a crime constitutes no defense to such a prosecution. However, if the criminal design originates in the mind of the officer and he induces a person to commit a crime which he would not otherwise have committed except for such inducement, such is entrapment and, in law, may constitute a defense." Haywood v. State, 482 S.

W.2d 855. See also McKelva v. State, 453 S.W.2d 298; Sutton v. State, 170 Tex.Cr.R. 617, 343 S.W.2d 452.

The testimony of Officer Gilstrap was evidence that when appellant approached him a criminal intent to possess and sell marihuana had already formed in appellant's mind. After the criminal intent in appellant's mind was revealed to Gilstrap, the officer did no more than make himself available as a customer and offer appellant an opportunity to negotiate and reveal the extent of his involvement in the marihuana trade. Entrapment, as a matter of law, was not shown. Because appellant's testimony conflicted with that of the agent, the court properly submitted the issue of entrapment, as a matter of fact, to the jury. McKelva v. State, 453 S.W.2d 298; Owens v. State, 385 S.W.2d 246. The finding of the jury was conclusive on the issue.

Appellant's first ground of error is overruled.

■ On his second ground of error, appellant contends that the punishment assessed by the court was excessive, cruel and unusual, in violation of his rights under the Texas and Federal Constitutions because of "mitigating circumstances." The mitigating circumstances appellant asserts are the fact that appellant was a Vietnam veteran whose first encounter with marihuana was overseas in the service of his country and the fact of "partial entrapment" as argued in his first ground of error. Both of these matters as well as other evidence offered by appellant in mitigation of punishment were before the court at the time it assessed punishment. Appellant admitted to having possessed at least 46 pounds of marihuana. The punishment was within the range permitted under the Texas Controlled Substances Act, as discussed above. The punishment being within the statutory limits, it was not excessive, cruel, or unusual. Morse v. State, 502 S. W.2d 805; Williams v. State, 476 S.W.2d 674; Cook v. State, 467 S.W.2d 421; Broom v. State, 463 S.W.2d 220, cert. den.

402 U.S. 933, 91 S.Ct. 1523, 28 L.Ed.2d 868.

We overrule this contention.

The judgment is affirmed.

Opinion approved by the Court.