Michael Wayne LANGFORD, Appellant,

v.

The STATE of Texas, Appellee.

No. 56977.

Court of Criminal Appeals of Texas,
Panel No. 3.

Sept. 27, 1978.

M. Bruce Fort, Texas City, for appellant.

James F. Hury, Jr., Dist. Atty., Michael P. Heiskell, Asst. Dist. Atty., Galveston, for the State.

Before ROBERTS, PHILLIPS and VOLLERS, JJ.

OPINION

PHILLIPS, Judge.

This is an appeal from an order revoking probation. On November 24, 1975, the ap-

pellant was convicted of the offense of burglary of a building upon his plea of guilty. V.T.C.A., Penal Code, § 30.02(a)(3). Punishment was assessed at five years, probated.

On May 10, 1976, the State filed its motion to revoke probation alleging that appellant:

". . . . on or about the 19th day of January, 1976, in Brazoria County, Texas, did then and there intentionally and knowingly without the effective consent of Eddie Forbes, enter a building owned by the said Eddie Forbes and did then and there commit theft, to-wit: did then and there unlawfully appropriate property from Eddie Forbes, the owner thereof without the effective consent of the said Eddie Forbes, and with intent to deprive said owner of said property."

On February 25, 1977, a hearing was conducted on the State's motion to revoke, and the trial court revoked appellant's probation. Appellant alleges in his one ground of error that the trial court abused its discretion in revoking probation when the evidence established that the appellant was induced to commit the crime by a law enforcement officer.

The evidence adduced at the revocation hearing reveals that on January 19, 1976, between 9:00 and 9:30 p. m., a drug store was burglarized in Angleton. Officer Larry Hatthorn testified that he was dispatched to the Mediciman drug store in response to a burglar alarm. Upon his arrival, a vehicle left the drug store parking lot. Officer Hatthorn stopped the vehicle and placed two suspects, later identified as Debbie Kelsey and Larry Graugnard, under arrest. After investigation, a warrant was issued for the arrest of the appellant and Joseph Kelsey. After the appellant was arrested, Officer Hatthorn transferred the appellant from the Texas City Police Department to Angleton. Hatthorn then stated he took appellant before a magistrate who read appellant his rights. Later, appellant was taken to Hatthorn's office and, after again being advised of his rights, gave a confession to the burglary. At that time, appellant did not make reference to an Officer Fleming or request to call any police officer. On cross-examination, Hatthorn admitted that another officer could have taken appellant to the magistrate and his previous testimony on that point could be in error.

Detective Frank Fleming of the Texas City Police Department testified for the defense that appellant had worked for him in an undercover capacity. After appellant had been convicted of the burglary charge, and prior to the court's grant of probation, the appellant had been approached by and later agreed to work with Officer Fleming. Fleming told appellant that he wanted appellant to get close to several people suspected in a series of burglaries, including Charlie Delgado, Joseph Kelsey, and Larry Graugnard. Fleming had instructed appellant to work with these people but he wanted to be contacted about the time and place of the burglaries before they occurred. As a result of this arrangement, appellant provided Fleming with information on several occasions, not only in Galveston County.

When Fleming executed the arrest warrant for appellant in January of 1976, the appellant had told Fleming that he had been unable to reach a phone prior to the burglary. Fleming stated that it was highly possible that a person acting in an undercover capacity could be in such a situation. In commenting on the importance of this telephone call, Fleming testified:

"Q. And the big foul-up on this thing was that there was no phone call to you?

A. Yes, sir.

Q. Had there been a phone call to you, then he wouldn't be in trouble today?

A. No, sir, he sure wouldn't.

\* \* \* \* \* \*

Q. As far as you know, Mr. Langford could have been a person who was trying to do what you told him to do and just got in a situation that he couldn't get out of?

A. Would you repeat that question?

Q. Well, let me rephrase it and you answer the question for me: If he had got in touch with you by phone, then there would have been no problems afterwards and you could have bailed him out?

A. No, sir.

Q. Sir?

A. There wouldn't have been any problems, sir."

On cross-examination, the State sought to show that appellant may have taken advantage of the relationship in order to commit a crime.

Appellant testified in his own behalf that he had been asked by Fleming to work undercover in order to gain information on Charlie Delgado, Joseph Kelsey, and others. Appellant was instructed to find out when, where, and what time the others would commit a burglary and call Fleming to give him that information. Appellant was then to accompany the others to the place to be burglarized. On January 19, the day of the present burglary, appellant called Officer Fleming who instructed appellant to obtain information on a burglary which had occurred the previous Sunday. In response to this request, appellant went to the home of Joseph Kelsey, where they were later joined by Charlie Delgado. Kelsey and Delgado were suspicious that appellant was working with the police. Upon their suggestion, appellant took a narcotic drug in order to prove he had no connection with the authorities. They next decided to burglarize the drug store and appellant had no opportunity to contact Officer Fleming prior to the actual burglary. He did contact Fleming January 21, after having made his way back to Texas City.

Appellant now contends that the evidence showed entrapment by the State as a mat-

ter of law and, on that basis, the revocation order cannot stand.

There are two general tests for entrapment recognized throughout the United States: one "subjective" and the other "objective." Under the generally accepted "subjective" test, the Court will make two inquiries: first, whether there was inducement on the part of the State and, second, whether the defendant showed any predisposition to commit the offense. Under the "objective" test, which has been adopted by a small but growing minority of states,[1] the Court considers only the nature of the police activity involved without regard to the criminal tendencies of the defendant.

In this State, the defense of entrapment was first recognized in 1956 in the case of *Cooper v. State*, 162 Tex.Cr.R. 624, 288 S.W.2d 762. In *Cooper*, this Court adopted what is now known as the "subjective" test and stated the rule as follows:

"It is the general rule that where the criminal intent originates in the mind of the accused the fact that the officers furnish the opportunity for or to aid the accused in the commission of a crime constitutes no defense to such a prosecution. However, if the design originates in the mind of the officer and he induces a person to commit a crime which he would not otherwise have committed except for such inducement, this is entrapment, and in law may constitute a defense to such crime." (citations omitted)

This subjective test has been consistently followed up until the enactment of our present statute, V.T.C.A., Penal Code, § 8.06. See *Redman v. State*, Tex.Cr.App., 533 S.W.2d 29; *Poe v. State*, Tex.Cr.App., 513 S.W.2d 545; *Kilburn v. State*, Tex.Cr. App., 490 S.W.2d 551; *Caudillo v. State*, Tex.Cr.App., 462 S.W.2d 576; *Gomez v. State*, Tex.Cr.App., 461 S.W.2d 422; *McKel-*

1. See *State v. Mullen*, 216 N.W.2d 375 (Iowa Sup.Ct. (1974); *People v. Turner*, 390 Mich. 7, 210 N.W.2d 336 (1973); *State v. Sainz*, 84 N.M. 259, 501 P.2d 1247 (1972); *Grossman v. State*, 457 P.2d 226 (Alaska Sup.Ct. 1969); *People v. Benford*, 53 Cal.2d 1, 345 P.2d 928 (1959).

For discussions of the "objective" test in the federal area, see *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932)

(concurring opinion Justice Roberts); *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958) (concurring opinion Justice Frankfurter); *Greene v. United States*, 454 F.2d 783 (9th Cir. 1971); *Williamson v. United States*, 311 F.2d 441 (5th Cir. 1962) aff. per curiam 340 F.2d 612 (5th Cir.) cert. denied 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 724 (1965).

*va v. State,* Tex.Cr.App., 453 S.W.2d 298; *Sutton v. State,* 170 Tex.Cr.R. 617, 343 S.W.2d 452.

Our present statute has now codified the defense of entrapment under V.T.C.A., Penal Code, § 8.06, which statute provides:

"(a) It is a defense to prosecution that the actor engaged in the conduct charged because he was induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

"(b) In this section 'law enforcement agent' includes personnel of the state and local law enforcement agencies as well as of the United States and any person acting in accordance with instructions from such agents."

This section was derived from the New York Statute, McKinney's Penal Code,

§ 40.05.[2] As construed by the New York courts, that statute follows the "subjective" test for entrapment. As noted in *People v. Isaacson,* 56 A.D.2d 220, 392 N.Y.S.2d 157 (1977):

"Thus evidence of other criminal acts of a defendant may be introduced on the People's case-in-chief in order to refute the defense of entrapment . . . . Such conduct shows that the defendant was 'otherwise disposed to commit [the offense].' (Penal Law § 40.05)."[3]

When our statute is compared to the New York provision, it is readily apparent that the drafters of our present penal code intentionally omitted the provision that "the offense would be committed by a person not otherwise disposed to commit it." Since this provision is the one upon which the "subjective" test is founded, it can only be concluded that the legislative intent was to adopt the "objective" test for entrapment.[4]

---

2. McKinney's Penal Code, § 40.05, provides: "In any prosecution for an offense, it is an affirmative defense that the defendant engaged in the proscribed conduct because he was induced or encouraged to do so by a public servant, or by a person acting in cooperation with a public servant, seeking to obtain evidence against him for a criminal prosecution, and when the methods used to obtain such evidence were such as to create a substantial risk that the offense would be committed by a person not otherwise disposed to commit it. Inducement or encouragement to commit an offense means active inducement or encouragement. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment."

3. See also *People v. Joyce,* 47 A.D.2d 562, 363 N.Y.S.2d 634 (1975).

4. It is noted that the American Law Institute Model Penal Code, 1962 Proposed Official Draft, Art. 2, § 2.13, adopted the "objective" test for entrapment. In considering this issue, Tentative Draft 9, Art. 2, § 2.10, proposed the "subjective" test. The commentary to that section stated:

"The entrapment issue sharply divided the Council in much the same way as the issue had divided the Supreme Court in *Sorrells* and *Sherman.* On balance, a majority of the Council favored the main formulation which embraces the existing law and takes into account the prior record and conduct of the defendant. In the judgment of the majority the greatest vice inheres in that police behavior which leads the previously innocent to crime. They were, therefore, of the view that the defense should be limited to such situations. Predisposed defendants are largely the professionals, who constitute the greatest crime problem. Freeing him in order to discipline the police was thought too great a price. When officers deal with the criminally disposed, they may find it necessary to employ methods which would be quite out of place if directed to the 'innocent.'

"The Reporter and the Special Consultant prefer the alternative [objective] formulation, which also reflects the preference of a majority of the Advisory Committee.

"If the defense is available only to persons who are 'innocent,' the full deterrent effect of the defense is undermined. Police conduct toward a particular defendant may be seriously objectionable even though he entertained a purpose to commit crime prior to any inducement by officials. Law enforcement officers may feel free to employ forbidden methods if the 'innocent' are freed but the habitual offenders, in whom the police have the greater interest, will nevertheless be punished.

"Investigation into the character and disposition of the defendant has often obscured the important task of judging the quality of police behavior. The emphasis of courtroom inquiry is thus turned from the character of police conduct to the history of the

This same conclusion is reached in the practice commentary to Section 8.06:

> "If the causation or inducement element is decided in defendant's favor, Subsection (a) focuses on the nature of the inducement methods. This second standard changes the focus of the entrapment defense, as previously recognized, which looked at the defendant's criminal proclivities. The defendant's predisposition to commit the crime and, for purposes of the entrapment defense, his prior criminal record are immaterial. Rather, Section 8.06 focuses on whether, objectively considered, the inducement methods used are likely to induce one with innocent intentions to commit the crime. If the inducement attains that intensity, a determination of whether the defendant would have committed the crime with less or no encouragement ordinarily involves unsatisfactory and highly prejudicial (to the defendant) evidence, and thus has been rejected as an element of entrapment by this section."

The reasoning behind this "objective" test for entrapment is further described by Justice Stewart in his dissenting opinion in *United States v. Russell*, 411 U.S. 423, 441, 93 S.Ct. 1637, 1647, 36 L.Ed.2d 366 (1973):

> "Thus, the focus of this [objective] approach is not on the propensities and predisposition of a specific defendant, but on 'whether the police conduct revealed in the particular case falls below standards, to which common feelings respond, for the proper use of governmental power.'
>
> . . .
>
> "In my view, this objective approach to entrapment advanced by the Roberts opinion in Sorrells and the Frankfurter opinion in Sherman is the only one truly consistent with the underlying rationale of the defense. Indeed, the very basis of the entrapment defense itself demands adherence to an approach that focuses on the conduct of the governmental agents, rather than on whether the defendant was 'predisposed' or 'otherwise innocent.'
>
> . . .
>
> "Furthermore, to say that such a defendant is 'otherwise innocent' or not 'predisposed' to commit the crime is misleading, at best. The very fact that he has committed an act that Congress has determined to be illegal demonstrates conclusively that he is not innocent of the offense. He may not have originated the precise plan or the precise details, but he was 'predisposed' in the sense that he has proved to be quite capable of committing the crime. That he was induced, provoked, or tempted to do so by government agents does not make him any more innocent or any less predisposed than he would be if he had been induced, provoked, or tempted by a private person—which, of course, would not entitle him to cry 'entrapment.' Since the only difference between these situations is the identity of the temptor, it follows that the significant focus must be on the conduct of the government agents, and not on the predisposition of the defendant.
>
> "The purpose of the entrapment defense, then, cannot be to protect persons who are 'otherwise innocent.' Rather, it must be to prohibit unlawful governmental activity in instigating crime."

■ We therefore hold that our present statute provides for the "objective" test for

---

accused and his immediate reaction to enticement.

"The very notion that certain police conduct may be improper in relation to the 'innocent' but acceptable when addressed to the 'guilty' seems incompatible with the ideal of equality before the law. As Mr. Justice Frankfurter put it in his concurring opinion in the *Sherman* case: 'Permissible police activity does not vary according to the particular defendant concerned; surely if two suspects have been solicited at the same time in the same manner, one should not go to jail simply because he has been convicted before and is said to have a criminal disposition.' 356 U.S. at 383. Further, to permit the use, against a previously convicted person, of police measures not permitted toward the rest of society is to fix a permanent status of criminality against the hopes of enlightened penology." (footnotes omitted)

When later presented to the Institute, the ALI preferred the reasoning of the "objective" test and that test now appears in the Model Penal Code.

entrapment. Having once determined that there was an inducement, the trial court need now consider only the nature of the police activity involved, without reference to the predisposition of the particular defendant. See 62 A.L.R.3d 110.

In applying this objective test to the facts of this case, it is apparent that there was an inducement on the part of the State. The evidence is uncontroverted that the appellant stood convicted of the offense of burglary and he was given probation only after he agreed to work with Officer Fleming. Concerning the details of the agreement, Fleming testified:

"Q. Okay, and you instructed him that you wanted him to get in with them and let you know when the burglary was coming down and in some way let you know where it was going to be and that you would bail him out of that; isn't that true?

A. Yes, sir.

Q. And, if he'd get picked up with the other folks, that you'd get him and pull him aside, then that way you would catch them in the burglary.

A. Yes sir.

Q. And he also provided you with some information about some other folks, didn't he?

A. Yes, sir.

Q. Like Kenny Gates, for example?

A. Yes, sir.

Q. He provided you with information concerning Kenny Gates which resulted in him being arrested?

A. Yes, sir.

Q. And how was he to contact you, detective?

A. By phone.

Q. And you were not always at home or at the station all the time, were you?

A. No, sir.

Q. So there could be sometimes a problem getting in touch with you?

A. Yes, sir.

Q. Did he actually contact you prior to some of these burglaries like he was suppose to and make arrangements for you to catch these people?

A. Yes, sir, he did.

   *    *    *    *    *    *

Q. Now, have you ever done undercover work yourself?

A. Yes.

Q. You are acquainted with the fact that sometimes when you get in you can't always get away and get to a phone, can you?

A. Yes, sir.

Q. You get locked into situations, sometimes, can't you?

A. I never have been, sir.

Q. O.K., but it's highly possible; isn't it?

A. Yes, sir.

Q. Especially if somebody might be suspicious that you were an officer.

A. Sir, you are always running a risk of that."

This uncontradicted testimony, corroborated by the appellant, reveals that it was the agreement and action of Officer Fleming which placed appellant in the position of informer and required appellant to participate in the burglaries. Further, the uncontradicted evidence showed that, on the day of the present burglary, appellant had been instructed by Fleming to seek out Kelsey and Delgado in order to obtain certain information. When appellant did as he was instructed by Fleming, he was placed in a situation where he could not gain access to a telephone. Fleming was well aware that such situation could occur.

■ While it is proper that law enforcement officers should diligently seek to ferret out crimes and violations of the law, the State cannot solicit and then encourage an individual to commit a crime and later seek to punish that individual for that offense. This does not imply that police informers will have free rein to commit crimes while working for the police. An informer will not have a license to commit a crime or

work with known criminals other than those he is investigating pursuant to direct instructions from the police. Consequently, an entrapment issue will be determined on a case by case basis depending upon the particular facts in each case.

██ In the instant case, appellant was in the company of those individuals he had been investigating and had been instructed to gain information on the same day the burglary was committed. He was then placed in a situation the police anticipated and was unable to reach a telephone. On the facts of this case, the State could not induce appellant to commit the burglary and then seek to revoke his probation with the offense. Having failed to rebut or contradict the defensive evidence of entrapment, we hold the facts of this case establish a prima facie case of entrapment.

The order revoking probation is reversed.

ROBERTS, J., concurs in results.

VOLLERS, Judge, dissenting.

The majority in this cause is holding that the appellant has established entrapment as a matter of law. With this conclusion I cannot agree.

First of all V.T.C.A. Penal Code, Section 8.06 provides:

"(a) It is a defense to prosecution that the actor engaged in conduct charged because he was *induced to do so* by law enforcement agent using persuasion or other means likely to cause persons to commit the offense." (Emphasis added.)

The testimony in this cause shows that Detective Fleming testified that appellant worked for him in an undercover capacity both before and after he was placed on probation. Fleming stated that in the early part of 1975 he initiated conversations with appellant regarding his interest in appellant's "getting in" with three suspected burglars and supplying him with information for burglary investigations. The persons arrested along with appellant for the burglary in question were in fact the same persons Fleming had been interested in investigating. However, Fleming instructed

appellant to report anything to him, but to contact him by phone before he participated in any activities with the suspects so that Fleming could "catch them" in the burglary, but "bail appellant out."

When appellant was arrested on the charge of committing the burglary in question Fleming executed the warrant for appellant's arrest. He testified that at first appellant did not mention the burglary in Brazoria County but then did relate to him the fact that he had been with the suspects Fleming was investigating in Galveston County and had been unable to get to a telephone to call Fleming before the burglary. At that point Fleming told him that there wasn't anything that he could do and that he should have dropped the whole thing right there and then. Fleming further testified that he did not suggest to appellant that he go to another county to commit a burglary to catch these other people.

Officer Hatthorn testified that he transferred appellant to the Brazoria County Courthouse where he took appellant before a magistrate for the purpose of having his rights explained to him. Thereafter he took appellant to his office, also in the Brazoria County Courthouse, advised appellant of his rights again and took a statement which was reduced to writing and constituted a confession to the burglary. In taking this confession appellant did not tell him anything about Sgt. Fleming of the Texas City Police Department and did not make a request to call Sgt. Fleming.

From this testimony it appears that the determination of this issue rests solely upon the appellant's testimony that in following Sgt. Fleming's instructions he found himself in a position where he could not call Sgt. Fleming and he could not back out of the plans to burglarize the drugstore in question. Therefore, the determination of whether or not the defense of entrapment was established rests solely upon the appellant's testimony. I am compelled to disagree with the majority conclusion that the trial judge was bound to believe the testimony of the appellant. This is especially

true in light of the fact that after appellant escaped from the scene of the burglary he did not call the officer who supposedly entrapped him nor did he mention it to this officer when that officer executed the warrant of arrest. Furthermore there was no mention of this "entrapment" when he gave a written confession to the commission of the crime.

The trial judge must be satisfied by a preponderance of the evidence that the appellant violated the terms and conditions of his probation. *Scamardo v. State*, 517 S.W.2d 293 (Tex.Cr.App.1975). It was the trial judge, and not the members of this Court, who heard the witnesses testify and saw their expressions and conduct while appearing as live witnesses. I am simply not ready to declare that the trial judge had no discretion in whether or not to believe the testimony of a witness that appears before him, whether it be a person who is charged with the commission of a crime or any other witness.

I dissent.