David Brainard **MONTGOMERY,**
**Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 57373.**

Court of Criminal Appeals of Texas,
Panel No. 3.

Nov. 7, 1979.

J. Michael Jaynes, Dallas, for appellant.

Henry Wade, Dist. Atty., William M. Lamb, L. S. Eubanks, Jr., and C. Wayne Huff, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, PHILLIPS and W. C. DAVIS, JJ.

OPINION

ODOM, Judge.

This is an appeal from a conviction for aggravated robbery. Punishment was assessed at life.

In his first ground of error appellant urges reversible error was committed by the trial court's denial of his proper and timely request for a jury charge on the defense of mistake of fact. V.T.C.A., Penal Code Sec. 8.02.

The trial of this case lasted several days and involved over a dozen witnesses. The events on which the prosecution was brought occurred at appellant's home on February 18, 1976. At about 8:00 p. m. on that day Garland undercover agents W. E. Anderson and Danny Holder arrived at appellant's home for the purpose of buying a large quantity of marihuana. Anderson had $18,000 in money supplied by federal drug authorities, and was wired with a broadcasting device that enabled other police officers stationed nearby to hear the conversations occurring in the house. During the meeting appellant twice went out the back door of the house to talk to someone in a Toyota who had driven up in the alley behind the house. He told the undercover officers that there were police officers in the area and they would have to wait a time before making the sale. After awhile appellant pulled a pistol and demanded the $18,000, which Anderson surrendered. Appellant then prepared to spray the undercover agents with Mace when the outside officers listening over the electronic devices came to the undercover agents' rescue. Appellant fled, but was captured nearby and the money was recovered.

Appellant testified to a lengthy relationship with Louis Caney. He met Caney in June of 1975. Appellant was on parole for a federal offense at the time. When Caney discovered this, he told appellant that he was a narcotics officer with the Garland police force, and that he wanted appellant to work as an informant for him. Appellant refused, and when Caney insisted and threatened to have him sent back to prison by setting him up for possession of drugs, appellant moved first to his mother-in-law's house, and then to another address in an effort to elude Caney and his demands.

Several months later Caney again located appellant, and told him that he no longer wanted him to work as an informant, but

that he wanted him to help convince Anderson that he was a drug dealer so Caney could gain Anderson's confidence and make a case against Anderson for possession of drugs. Caney told appellant that Anderson was a dealer for one Furrh, who was reputed to be a big time cocaine dealer, and Caney wanted to make a case on Anderson so he could use Anderson to get Furrh. Appellant was again threatened by Caney with being sent back to prison if he did not cooperate. At this point appellant agreed and entered into a scheme to set up Anderson, represented by Caney to be a drug dealer wanting to buy, but in fact an undercover agent. Caney phoned appellant daily until arrangements were made for a deal on February 18 at appellant's house. At Caney's directions appellant had arranged for a marihuana seller to supply a large quantity of the substance for Anderson to purchase. According to appellant the seller would deal only with appellant and would require the $18,000 purchase money up front. Caney told appellant that he and another officer, whom he referred to only as Art, would be outside the house during the transaction in case of an emergency and to make the arrest after the sale, and that other officers would be stationed nearby. He also told appellant that if he wanted any protection inside the house he had better get a gun, and that under no circumstances was he to let the purchase money get away.

According to appellant, on the night of the arranged sale, Anderson and his partner arrived at around 8:00 p. m. When time came for the actual sale, Anderson refused to pay the money up front as had been arranged, so that appellant could take the money out to the seller and bring the marihuana in. He told Anderson that he would have to trust him with the money, but Anderson replied, "No way." Appellant intended to complete the deal and took the money with the intent to go out the front door to buy the marihuana and bring it back in to Anderson. He pulled the gun to take the money and called for Art to come

in and control Anderson and his partner while appellant completed the deal. He told Anderson it was not a "rip off" and that they were going to do the deal his way. When no one came in after appellant called for Art, he took a spray can of mace-like eye irritant to temporarily disable Anderson and Holder, but at this time the outside officers stormed the house from the front. Appellant fled through the back looking for Caney. Appellant insisted that he took the money because Caney had told him that under no circumstances was he to let the money get away, and had promised appellant a place in prison if they did not get a "bust" out of the deal that night.

Anderson and Holder testified that Caney introduced them to appellant, but that Caney was not involved in setting up the deal. Anderson testified that Caney was not a police officer. Caney had been a police cadet, but he was not one at the time of these events. Caney died in an automobile accident shortly before the trial.

The issue on appeal is not whether appellant's story is true or even believable. That issue is exclusively for the jury as trier of fact. The issue before this Court is whether the evidence raised the defense of mistake of fact such as to entitle appellant to a jury instruction on the issue.

". . . the jury may accept or reject all or a part of a witness's testimony, and even though a part of that testimony is in conflict with or is contradicted by other evidence the jury may give credence to that part of the testimony. See *Barrera v. State*, 491 S.W.2d 879 (Tex.Cr. App.1973); *Pizano v. State*, 489 S.W.2d 284 (Tex.Cr.App.1973); *Angle v. State*, 486 S.W.2d 308 (Tex.Cr.App.1972); *Dawson v. State*, 472 S.W.2d 775 (Tex.Cr.App. 1971).

"It is also well recognized that a defendant is entitled to an instruction on every issue raised by the evidence, whether produced by the State or the defendant, and whether it be strong, weak, unimpeached, or contradicted. See *Gavia v.*

*State*, 488 S.W.2d 420 (Tex.Cr.App.1972); *Yeager v. State*, 96 Tex.Cr.R. 124, 256 S.W. 914 (1923); *Hubbard v. State*, 153 Tex.Cr.R. 143, 217 S.W.2d 1019 (1949); *Perez v. State*, 146 Tex.Cr.R. 241, 172 S.W.2d 314 (1943); *Pounds v. State*, 142 Tex.Cr.R. 52, 150 S.W.2d 798 (1941); 31 Tex.Jur.2d, Instructions, Sec. 110, pp. 660–61." *Thompson v. State*, Tex.Cr. App., 521 S.W.2d 621, 624.

Section 8.02(a), supra, provides:

"It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense."

Appellant contends his testimony shows that he through mistake formed a reasonable belief about a matter of fact that negated the culpability required for aggravated robbery, in that it shows he mistakenly believed he was working for and following the instructions of Caney, whom he believed to be a law enforcement officer, and that on those instructions he was attempting to compel Anderson to follow through with the marihuana sale and was following Caney's explicit instructions that under no circumstances was he to let the money get away.

The State in reply asserts appellant was motivated by fear of Caney and of Caney's threats to plant drugs on him, and was not motivated to participate in the transaction by a desire to assist law enforcement. This is unresponsive to the issue, which turns on appellant's mistaken beliefs, not his motives.

■ The State also argues that the appropriate defense was duress (V.T.C.A., Penal Code Sec. 8.05) or entrapment (V.T.C.A., Penal Code Sec. 8.06), on which the jury was charged, rather than mistake of fact. The duress defense is based on compulsion by threat, and focuses on the conduct of the person making the threats. The entrapment defense is based on inducement by a law enforcement agent, and focuses again on the conduct of the other person. The mistake of fact defense, in contrast, is based on the mistaken belief of the accused, and it looks to the conduct of others only to the extent that any such conduct contributes to the mistaken belief.

■ The testimony in this case did raise the issue of whether appellant through mistake formed a reasonable belief that he was acting on instructions from a law enforcement officer that would negate the culpability required for aggravated robbery, and the jury should have been charged on the issue. If the evidence raises more than one defensive issue, the accused is entitled to submission of each, and the submission of one does not dispense with the need to submit others. The court is required to charge on every defensive issue raised by the evidence. E. g., *McKenzie v. State*, Tex.Cr.App., 521 S.W.2d 637. Submission of a charge on duress and entrapment did not eliminate appellant's right to submission of a charge on mistake of fact.

■ The State also argues that submission of the defense of mistake of fact was not required because the charge included the statutory definition of intent from V.T. C.A., Penal Code Sec. 6.03(a), which requires a finding that it was the defendant's conscious objective or desire to engage in the conduct or cause the result. This position overlooks the rule that the accused is entitled to an *affirmative* submission of every defensive issue raised by the evidence. See, e. g., *Wheeler v. State*, 56 Tex.Cr.R. 547, 121 S.W. 166.

We hold it was reversible error to deny appellant's timely request for a charge on the defense of mistake of fact.

The judgment is reversed and the cause remanded.