**Roberto Blanco RODRIGUEZ aka Johnny Sanchez, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 64277.**

Court of Criminal Appeals of Texas, En Banc.

Jan. 4, 1984.

Dick Stengel, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. and James T. Carter, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CLINTON, Judge.

Appellant was found guilty of two counts of theft over $200.00 by a jury which assessed punishment at five years and nine years on the respective counts.

In his sole ground of error, appellant contends the evidence is insufficient to sustain his conviction in that the evidence shows as a matter of law that he was entrapped. To decide that contention a review of the facts is necessary, and we now turn to an examination of the testimony.

The evidence shows that the El Paso Police Department was conducting an undercover "sting" operation. As part of this operation, two officers were set up as operators of a carpentry shop. Word was put out on the street that the people who operated the carpentry shop would buy stolen property. Sergeant William Pfeil testified that on February 26, 1979, he received a call from appellant who asked him if he would like to buy a Ford LTD.[1] Pfeil replied that he would like to see the car and he would pay approximately $800.00 for it. Thirty minutes later, appellant drove the car into the shop. He related to the officers how he had stolen the car. A deal was struck and the officer paid appellant $900.00 for the car.

Pfeil also testified that on March 1, 1979, appellant called and left a message on Pfeil's answering machine. The message said that appellant had some property for the owners of the carpentry shop and he would call them back. Appellant soon called back and related that he had a motorcycle to sell. Pfeil instructed appellant to meet him at the carpentry shop. When Pfeil arrived at the shop, he found a 1978 650 Yamaha motorcycle sitting in front of the door. Pfeil pushed it into the building. Soon appellant arrived and again he explained to the officers how he had stolen the motorcycle. Appellant also stated he had a CB radio to sell. When the officers

1. Pfeil testified he had met appellant on an earlier date when appellant had come to the shop and sold Pfeil two items of property.

asked appellant how much he wanted, appellant asked for $200.00. The officers paid him and appellant left. Sgt. Pfeil testified that they did not induce appellant to call them regarding stolen property, nor did they ever initiate contact with appellant. Furthermore, he testified that they never told appellant to steal the Ford LTD or the Yamaha motorcycle. Finally, he testified that an individual named Danny Gallegos did not work for the police department.

Appellant took the stand and testified. It was early February when he first came into contact with agents of the United States Customs Service or undercover agents of the El Paso Police Department, and he met with a man named Danny Gallegos at this point in time, which is approximately March. Approximately a week after meeting him, Gallegos took appellant to Nelson's Custom Carpenters. Appellant testified that there was another person with Gallegos who gave appellant a badge and wallet, and that this other person was a police officer. The agent told appellant, "You can just tell them you're an undercover agent." Appellant testified that the agent kept insisting that he take part in the act; that Officer Pfeil and his companion asked him to bring them a 1979 Trans Am.

Appellant knows now that Danny Gallegos is an undercover agent for the police, and he testified that Gallegos is the cause of his becoming involved with theft. On February 26, 1979 Gallegos was the companion of appellant in the theft of the automobile. Gallegos participated entirely in the transaction to steal complainant's Ford LTD and in the theft of another complainant's motorcycle. According to appellant, Gallegos was receiving money from the police to take people to Nelson's Carpenter Shop and also taking money and splitting what was received from the sale of stolen property. In answer to the question of where is Gallegos now, appellant testified that he believed Gallegos to be in Los Angeles but has been unable to find him.

On crossexamination appellant reiterated that Gallegos was working for the police undercover, and that he knew he was working for them because he was "getting paid from them." The reason Gallegos was not with him on February 26 when he brought the car in was that he "couldn't come in with me," but he split the $910.00 with Gallegos in a nightclub immediately after receiving the money for the Ford LTD. He further implicated Gallegos in the sale of the motorcycle.

Appellant testified that he was entrapped.

As to each theft charge the trial court abstractly instructed the jury on the law of entrapment substantially in terms of V.T. C.A. Penal Code, § 8.06, viz:

> "You are instructed that it is a defense to prosecution that a person engaged in the conduct charged against him because he was induced to do so by a law enforcement agent or persons acting for and on behalf thereof using persuasion or other means likely to cause persons to commit the offense; however, conduct of law enforcement agents that merely affords a person an opportunity to commit an offense does not constitute entrapment."

Then the charge applied that law to the facts alleged, to the effect that if the jury found from the evidence that appellant committed the offense "solely because he was induced to do so by a law enforcement officer, by persuasion or other means likely to cause a person to do so, or if you have a reasonable doubt as to such matter, you will acquit the defendant and say by your verdict not guilty."[2] See V.T.C.A. Penal Code, § 2.03.[3]

---

**2.** All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

**3.** This Court has found that an instruction on entrapment similar to that given in the instant case "correctly instructed the jury on the law of entrapment," *Rangel v. State,* 585 S.W.2d 695, 698–699 (Tex.Cr.App.1979). See also form instructions on entrapment suggested by Texas Criminal Pattern Jury Charges 34, CPJC 8.06; McClung, Jury Charges for Texas Criminal Practice (Rev.Ed.1983) 288–289; Morrison & Blackwell, Willson's Texas Criminal Forms Annotated, § 85.07, 8 Texas Practice 179–180.

To support his contention appellant relies on an excerpt from the panel opinion on original submission in *Langford v. State,* 571 S.W.2d 326, 327 (Tex.Cr.App.1978).[4] However, *Langford* was a revocation of probation case, and the lead opinion makes clear that the entrapment issue there, as in all others, "will be determined on a case by case basis depending upon the particular facts of each case," *id.,* at 332. That being true, and given the ultimate disposition of *Langford* by the Court En Banc,[5] we do not regard it as having much precedential value in resolving *a question of evidentiary sufficiency.*

The State responds that the evidence it presented did rebut every material evidentiary matter appellant claims shows entrapment, but the decisions upon which it relies were all decided under the former penal code—before the defense of entrapment was codified by § 8.06. Still, we agree with the State that the evidence raised the issue as a matter of fact.

With the enactment of § 8.06, the Legislature adopted what is known as the "objective entrapment test." That is, as capsuled in *Norman v. State,* 588 S.W.2d 340 (Tex.Cr. App.1979):

"The objective entrapment test mandates that the trier of fact, having once determined that there was an inducement, need now consider *only* the nature of the State agent activity involved, *with-*

out reference to the predisposition* of the particular defendant."

*Id.,* at 346; *Bush v. State,* 611 S.W.2d 428, 429 (Tex.Cr.App.1980); see also *Montgomery v. State,* 588 S.W.2d 950, 953 (Tex.Cr. App.1979) and *Langford v. State,* supra, at 328–331;[6] accord: Moses, Criminal Defense Sourcebook 360.[7]

Thus, without reference to "predisposition" of appellant to commit the theft offenses, the issue was whether appellant was induced to engage in the penal conduct alleged through persuasion or other means likely to cause persons to commit the offenses or was merely afforded an opportunity to commit them. As the testimony summarized *ante* was in conflict, the trial court properly submitted the issue to the jury to resolve. The jury returned a verdict adverse to appellant's testimony and position, thus resolving the issue against him.

The judgment of conviction is affirmed.

MILLER, J., not participating.

McCORMICK, Judge, dissenting.

Although the result reached by the Court is correct, I find that I cannot agree with the reasoning in the Court's opinion. The Court today is adopting the "objective" test for entrapment, that is, looking solely at the nature of the inducement. The Court erroneously fails to examine the *predisposition of the accused* and asserts that such an

---

**4.** "On the facts of this case, the State could not induce appellant to commit the burglary and then seek to revoke his probation with the offense. Having failed to rebut or contradict the defensive evidence of entrapment, we hold the facts of this case establish a prima facie case of entrapment."

**5.** *Langford v. State,* 578 S.W.2d 737 (Tex.Cr. App.1979).

**6.** It is true that on motion for rehearing the majority noted that "the Court as a whole will not be bound by the *holding* of one judge of the panel and one judge concurring in the result;" since the opinion on original submission "did not set out the contradictory testimony as well the agreed testimony," and "undisputed testimony shows that appellant was not entrapped as a matter of fact or law," in order "that trial judges and attorneys will not be misled," the

original panel opinion was overruled. *Langford v. State,* supra, at 738–739. However, as we also pointed out in *Bush v. State,* supra, "the principles of law espoused by Judge Phillips' panel opinion, which were unquestioned by the opinion delivered on motion for rehearing, remain viable law," *id.,* at 429, n. 2. The same is true of the panel opinion on original submission in *Bush,* itself, for again a majority of the Court concluded: "The facts of this case require that the judgment be affirmed" regardless of the test applied. *Id.,* at 432.

**7.** The statutory definition of entrapment "places objective emphasis on the nature of the state's inducement rather than the subjective predisposition of the defendant and is a break with the federal defense."

inquiry is not mandated by V.T.C.A., Penal Code, Section 8.06.

This assertion is based on the language of the Practice Commentary to V.T.C.A., Penal Code, Section 8.06. It is interesting to note that the language of the Practice Commentary to Section 8.06, supra, was written initially to accompany the entrapment provision of the 1970 draft of the proposed revision of the Penal Code. This 1970 draft was rejected by the 62nd Legislature and thus never enacted into law. The proposed entrapment provision focused specifically on the inducement offered by the law enforcement agents and ignored completely the predisposition of the accused:

"Section 8.05. Entrapment

"(a) It is a defense to prosecution that a peace officer, or a person directed by a peace officer, induced the commission of an offense, in order to obtain evidence of the commission for prosecution, by methods creating a substantial risk that the offense would be committed *by one not otherwise ready to commit it.* However, there is no defense under this section if the peace officer, or person directed by him, merely afforded the actor an opportunity to commit the offense." (Emphasis added)

In 1973, the 63rd Legislature adopted the Penal Code as we know it today. The entrapment provision adopted by the Legislature differed considerably from that of the 1970 proposed draft:

"Section 8.06 Entrapment

"(a) It is a defense to prosecution that the actor engaged in the conduct charged because he was induced to do so by a law enforcement agent using persuasion or other means likely to cause *persons* to commit the offense. Conduct merely affording a person an opportunity to commit

an offense does not constitute entrapment." (Emphasis added)

Unfortunately, the writers of the Practice Commentary neglected to comment on Section 8.06 as adopted by the Legislature. Their commentary is taken almost verbatim from the commentary written for the 1970 proposed draft. Thus, the Legislature chose to broaden the scope of their focus from *"one not otherwise ready to commit (a crime)"* to simply *"persons."* The Practice Commentary is clearly wrong when it says that Section 8.06 focuses on whether the inducement method used is likely to induce one with *innocent intentions.* That is not the law.

"The cardinal rule of statutory interpretation is to ascertain the legislative intent in enacting a statute. *Minton v. Frank,* 545 S.W.2d 442 (Tex.1976). Such intent and a determination of the meaning of a statute is to be based upon *the language of the statute itself. Faulk v. State,* 608 S.W.2d 625, at 631.

In comparing the proposed entrapment provision with the one eventually adopted by the Legislature, we see that the Legislature did not want to totally exclude an examination of the accused's predisposition.

The majority opinion cites four cases to support its argument.[1] However, it seems that the writers of these opinions were also relying on the misleading commentary to Section 8.06, supra. Indeed, the panel opinion in *Bush v. State,* 611 S.W.2d 428 (Tex. Cr.App.1980), in enunciating the standard to be used, applies the test which the Legislature rejected in the 1970 proposed Penal Code:

"So under the test of Section 8.06, once the inducement element is established the trial court need consider only whether the methods of persuasion used are likely to induce *persons not ready and willing to commit the crime* to engage in the conduct charged." *Bush v. State,* 611 S.W.2d at 430 (Emphasis added)

---

1. In two of these cases, *Langford v. State,* 571 S.W.2d 326 (Tex.Cr.App.1978), and *Bush v. State,* 611 S.W.2d 428 (Tex.Cr.App.1980), the panel opinions which adopted the objective standard were overruled on rehearing. The

other two cases, *Norman v. State,* 588 S.W.2d 340 (Tex.Cr.App.1979), and *Montgomery v. State,* 588 S.W.2d 950 (Tex.Cr.App.1979), are panel opinions which construe Section 8.06, supra, in dicta.

As noted above, this is not what the enacted version of Section 8.06, supra, says, and we should not hold that the drafters intended such an objective test to be used.

The en banc majority of this Court, although never directly speaking to this issue, has by its acts previously denounced the objective test for entrapment which the majority now espouses. In *Langford v. State*, 571 S.W.2d 326 (Tex.Cr.App.1978), the panel, with one judge concurring and one judge dissenting, applied the objective test for entrapment and held that under the facts of the case a prima facie case of entrapment was established. However, on rehearing, the en banc majority of the Court held that Langford was not entrapped as a matter of fact or law and overruled the entire panel opinion. However, because the motion for rehearing had not been timely filed, the Court left the order reversing Langford's revocation of probation intact. *Langford v. State*, 578 S.W.2d 737 (Tex.Cr.App.1979).

In *Bush v. State*, 611 S.W.2d 428 (Tex.Cr. App.1980), a panel of this Court, with one judge dissenting once again, applied the objective test for entrapment and found the evidence sufficient to raise the issue of entrapment and reversed Bush's conviction. On rehearing, the majority en banc affirmed Bush's conviction, holding that regardless of the standard used the evidence was clearly insufficient to raise the issue of entrapment.

Because I believe the drafters of the current Penal Code rejected the objective test of entrapment as presented in the proposed revision of 1970, and because case law prior to the enactment of the Penal Code used the subjective test,[2] I concur only in the result reached.

---

**2.** See, for example: *Redman v. State*, 533 S.W.2d 29 (Tex.Cr.App.1976); *Poe v. State,* 513 S.W.2d 545 (Tex.Cr.App.1974); *Kilburn v.*

*State,* 490 S.W.2d 551 (Tex.Cr.App.1973); *Cooper v. State,* 162 Tex.Cr.R. 624, 288 S.W.2d 762 (Tex.Cr.App.1956).