

**NUMBER 13-10-00555-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

**WILLIAM JOSEPH LEE,** Appellant,

**v.**

**THE STATE OF TEXAS,** Appellee.

**On appeal from the 221st District Court
of Montgomery County, Texas.**

**MEMORANDUM OPINION**

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Chief Justice Valdez**

Appellant, William Joseph Lee, appeals his conviction of failure to register as a sex offender. *See* TEX. CODE CRIM. PROC. ANN. arts. 62.051 (West Supp. 2011), 62.102 (West 2006). Lee was sentenced to life imprisonment. By eight issues, which we have regrouped and renumbered, Lee contends that: (1) the evidence was legally insufficient to show that he failed to register as a sex offender; (2) the trial court erred by failing to

provide a mistake of fact jury instruction; (3) the trial court failed to "charge the [j]ury, as requested, on the [p]rovisions of [a]rticle 63.051(a) and (f)"; (4) the trial court erred by overruling his objection to evidence "concerning [his] personality as evidence of guilt"; (5) he is entitled to a new punishment hearing because the evidence was insufficient to show that a 1969 conviction was final; (6) the life sentence is illegal; (7) during the punishment phase, the trial court erred by overruling his objection that the State's argument was improper; and (8) the charge on punishment was erroneous. We reverse and remand.[1]

## I. THE EVIDENCE

Dana Wilson, the administrative technician with the Texas Department of Criminal Justice, testified that although registration of sex offenders begins in prison, the process is not completed until that person reports to the designated local law enforcement agency upon release. Wilson stated that in this case, Lee began the registration process with her on March 12, 2010. However, Lee was not officially registered on that date. Wilson explained that State's exhibit number 1 clearly states, "Not later than the 7th day after 3-19-2010 (date of release/placement on community supervision or juvenile probation), I [Lee] must personally appear at the following local law enforcement authority to verify and complete my registration . . . ." State's exhibit number 1, entitled "Pre-release Notification Form Texas Sex Offender Registration Program" and identified as a "CR-32" form, shows that Lee was required to register with the Montgomery County Sheriff's Office. This provision was initialed by Lee, and the document was signed by Lee. When asked whether a person who does not appear at

---

[1] This case is before this Court on transfer from the Ninth Court of Appeals in Beaumont pursuant to an order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

the Montgomery County Sheriff's Office has failed to verify or failed to register, Wilson replied, "They have failed to register."

Melvin Wood, Lee's parole officer, testified that Lee was provided a Certificate of Parole which set out the general rules that parolees are required to follow. Wood stated that State's exhibit 4, the first page of the certificate, contained three of the special conditions required of Lee. Wood explained that special condition "M" required Lee to register as a sex offender pursuant to Chapter 62. Wood stated that Lee signed a document on March 19, 2010, agreeing to register as a sex offender. Wood testified that on March 22, 2010, he conducted a visual search of Lee's residence, confirmed his next meeting with Lee, and informed Lee that he was required to register as a sex offender with Michelle Wallace of the Montgomery County Sheriff's Office.

According to Wood, at a meeting with Lee on April 3, 2010, he again informed Lee that he needed to comply with the requirement and report as instructed to Wallace. Wood testified that he was aware that Lee had scheduled a "registration appointment" with Wallace for March 30, 2010. However, Lee informed Wood that he had rescheduled this appointment for April 8. Wood stated that at the April 3 meeting, Lee confirmed that he had a registration appointment with Wallace on April 8, 2010. The evidence also showed that Lee again rescheduled his appointment with Wallace for April 13. After discovering that Lee had missed his rescheduled appointments, Wood submitted a violation report requesting revocation of Lee's parole. In the report, Wood "alleged two rule 8x violations, failure to register, one being for the appointment on the 13th . . . as he had been directed to by [Wallace]. And then the second allegation in

8M, failure to report on April 8th as he had been directed to by [Wallace]." Wood testified that the next time he met Lee, Lee was arrested for failure to register.

On cross-examination, Wood reiterated that special condition "M" required Lee to register as a sex offender and that Lee "expressed every intention of complying with his parole." Wood clarified that Lee was arrested on April 23, 2010 in his office. According to Wood, Lee had requested this meeting with Wood to inform Wood that he was taking certain medications. A warrant had already been issued for Lee's arrest; however, Wood did not ask Lee why he had not appeared for his meeting with Wallace. Wood acknowledged that Lee had attended all his scheduled appointments with him and his appointment with his therapy group.

On redirect examination, Wood stated that Lee lived in Conroe, located in Montgomery County, Texas. Wood explained that Lee was required to register as a sex offender with the Montgomery County Sheriff's Department.

Michelle Wallace testified that she is the registrar for the Montgomery County Sheriff's Office sex offender compliance unit. Wallace explained that she ensures "that any and all sex offenders within the county register and report as required." She then places the "data onto the Texas Department of Public Safety website for other agencies, citizens, general public, and victims to view." Wallace testified that her duties include ensuring "everybody is registered that is required to register as a sex offender within the state of Texas, if they are living in Montgomery County." She stated that initial registration "would be your first meeting. And then after that, you have verifications."

According to Wallace, on March 22, 2010, Wood informed her that Lee had been released from prison and had been placed on his case load. On March 26, 2010, Lee

4

contacted Wallace by phone, and they "discussed why he had waited until his seventh day for his initial registration appointment and [they] went ahead and set up an appointment." Wallace stated that Lee informed her that he was aware that he had seven days from his release from prison to register as a sex offender. Wallace testified that they then set Lee's initial registration appointment for March 30, 2010 at 1:00 p.m. "That same day [Lee] then called back—[Lee] called back. And due to having another appointment, we went ahead. And he asked if he could cancel that specific appointment and make a second appointment." According to Wallace, the second appointment was set for April 8, 2010 at 8:30 a.m., and Lee was "a no-show" for that appointment; however, later that day, he called to "confirm his 1:00 p.m. appointment for that day." Wallace stated that she told Lee "that he had already missed his appointment that morning and was a no-show on it and we would need to set another, third appointment." Wallace affirmed that Lee was in violation of his duty to register on April 8, 2010.

Wallace stated that a third appointment was set for April 13, 2010 at 2:30 p.m. Wallace testified that she then contacted Wood and informed him that Lee had missed his April 8 appointment and informed him of the new appointment date. According to Wallace, on April 13, Lee "again was a no-show and did not bother to call for his initial registration as a sex offender." When asked if she may have mistakenly told Lee that his third appointment was on May 13, 2010, Wallace replied, "No, ma'am" and claimed she was "100 percent sure" she told Lee the appointment was on April 13 "[b]ecause on the week of May 13th we had U.S. Marshals in our county doing compliance checks on all of our sex offenders" in order to make sure the offenders are living at the residence

5

they have reported. Lee was then arrested, and on May 25, 2010, he "was brought from the jail to [Wallace's] office . . . to complete his initial sex offender registration . . . ." Wallace confirmed that after he was arrested, Lee completed the registration. Wallace claimed that Lee was attempting to make excuses and blame her for his noncompliance.

On cross-examination, Wallace explained that when a "new" sexual offender merely moves to Montgomery County from another county, "[i]t is considered a verification stating that they moved into our county." Wallace testified that once a sex offender is released from prison, that person is required to report to her department for an initial registration where information acquired at the prison is confirmed as accurate.[2]

Tammy Sonsel, an employee with the "State of Texas, the prison system," testified on behalf of the defense. Sonsel stated that she has been "in classification of records, field services" for "[a]t least eight years" and has worked for "TDC" for thirteen years. According to Sonsel, under "Chapter 62 [she] is required to notify law enforcement—whenever he [the parolee] intends to reside to—that they are coming within seven days."

Sonsel testified that on March 12, 2010, Lee signed paperwork, including "CR-32 and -35" forms. Sonsel explained that the CR-35 is "a sex offender verification and registration." The CR-35 included a "registration date" of March 12, 2010. Sonsel stated that that information concerning Lee was sent to local law enforcement and that he signed the required paperwork. When defense counsel asked Sonsel if Lee was

_____

[2] According to Wallace, her department waits to notify the local school district of a sex offender's residence until the initial registration is completed. Wallace explained that her department must be provided proof that the offender is living at the address provided to the personnel at the prison before it notifies the school district.

"registered" that day, she replied, "Yes." The CR-35 is then sent to the Texas Department of Public Safety (the "DPS").

On cross-examination, the following exchange occurred:

[The State]: Defense counsel has been focusing a lot on completing the registration date. And clearly, from the questions to you, is implying that the Defendant has registered on March 12th, 2010. And if you could, please, just read that sentence right there to the jury.

[Sonsel]: "I must personally appear at the following local law enforcement authority to verify and complete my registration."

[The State]: So if a defendant—if a person is paroled and is required to register as a sex offender, that process is started with you at TDC, correct?

[Sonsel]: Yes, ma'am.

[The State]: Is it complete with you?

[Sonsel]: No, ma'am.

[The State]: When is it complete?

[Sonsel]: It is complete with law enforcement.

[The State]: So if a sex offender does not register with a local law enforcement agency, is he technically registered?

[Sonsel]: No.

Lee testified that he is seventy-six years old and had been incarcerated in the Texas Department of Criminal Justice for approximately twenty-seven years. Lee was released from prison on March 19, 2010. According to Lee, before he was released from prison, he was transferred to the "Goree Unit" in the "Huntsville area," and he was registered as a sex offender. Lee stated that on the afternoon he was released from prison, he met with Wood, his parole officer. When asked about Wood's explanation of

7

the sex offender registration requirements, Lee responded, "He said counseling. He said polygraphs. He said urinalysis. And he did—he did say verification, eventual verification." Lee stated that Wood told him to contact Wallace on Monday morning and that Wallace required Lee to get an identification card containing his address before meeting with him. According to Lee, he contacted Wallace on Monday morning, March 22, 2010, and she told him he needed to acquire his ID card before she would be able to meet with him and that he attempted to acquire his ID card. Lee testified that during this time, he was also making and attending doctors' appointments because he has "advanced inoperable cancer" and Hepatitis C.

Lee stated that he left a voicemail message for Wallace on March 26, 2010 informing her that he had passed the written test for his driver's license and that the receipt had his address. When Lee called Wallace back an hour later, she told him to report to her on March 30, 2010 at 1:30. Lee testified that he later realized that he had his initial screening at Michael E. DeBakey Veterans Hospital on that date. Lee then called Wallace again to reschedule his appointment; he requested the appointment date of March 29. Lee stated that he also told Wallace that he would be driving to Houston for his doctor's appointment and that he did not have a "blue card"—a certification that he had registered as a sex offender. Lee explained that a sex offender is required to present the blue card when he comes in contact with law enforcement officers. Lee was concerned about not having a blue card because "you go to jail if you don't." According to Lee, Wallace would not reschedule the appointment for March 29, and told Lee that if a police officer stopped him, Lee should tell the officer to call her. Wallace rescheduled

8

his appointment for April 8, 2010. Lee testified that although he was sure his appointment was at 1:00, it is possible he was mistaken.

Lee stated that he contacted Wood about the rescheduled appointment with Wallace and that Wood informed him that he was in violation of his parole. Lee testified that he told Wood that he tried to comply but that Wallace would not meet with him. Lee claimed he then called Wallace on April 6 and "appealed to her if I could come in and verify because [Wood] had threatened to violate my parole—" According to Lee, Wallace refused to reschedule his appointment, and it was still set for April 8.

Lee testified that on April 8 at 9:00 a.m., he called Wallace to confirm his 1:00 appointment with her. Wallace informed Lee that he had missed his appointment which had been set for 8:30 a.m. that day. Lee stated that he "then appealed to her: Please, well, let me come right now. . . . And [Wallace] said: No. I am in and out, and I am busy." Wallace then rescheduled Lee's appointment. Lee stated that he believed that his new appointment was for May 13, 2010. Lee testified that he had medical appointments on May 13, so he called Wallace back and "appealed to her, 'Please let me come in because I have two more appointments that is in conflict.'" According to Lee, Wallace advised him to cancel or reschedule his medical appointments. Lee claimed that he immediately called Wood to discuss his dilemma and that Wood told him he needed to comply with Wallace's requirements. Lee stated that he then called the hospital and rescheduled his medical appointment for May 17, 2010. Lee was arrested on April 23 in Wood's office.

When the State asked if Lee agreed that he was "supposed to register in Montgomery County," Lee replied, "No, I do not agree to that. I agree that I was

supposed—I registered at TDCJ and that they told me that I needed then to verify my registration." The State showed Lee State's exhibit 1, the CR-32 form and asked him to read the following: "Complete my registration." Lee agreed that he has a conviction requiring him to register as a sex offender and that he must do so annually for the rest of his life. However, Lee denied that he is required to register in Montgomery County and claimed he is merely required to "verify."

## II.   LEGAL SUFFICIENCY

By his first issue, Lee contends that the evidence is legally insufficient to support the conviction for failure to register as a sex offender. Specifically, Lee argues that there was no evidence that he failed to register as a sex offender because the evidence merely established that he failed to verify his registration. Lee alleges that under article 62.051, registration is accomplished in the penitentiary prior to release on parole and that the evidence showed he had completed his registration while still incarcerated.[3]

### A.   Standard of Review and Applicable Law

In a sufficiency review, we examine the evidence in the light most favorable to the verdict to determine whether any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010). The fact-finder is the exclusive judge of the facts, the credibility of witnesses, and of the

---

[3] Lee neither claims that the evidence was insufficient to prove that he acted intentionally, knowingly, or recklessly nor provides clear and concise argument with citation to appropriate authority to support such a claim. Accordingly, we do not address this issue. *See* TEX. R. APP. P. 38.1(i). Furthermore, evidence was presented that Lee was informed that in order to complete the registration process, he was required to register with local law enforcement upon his release. This evidence supports a conclusion that Lee intentionally failed to register with Montgomery County officials.

10

weight to be given testimony. *Brooks*, 323 S.W.3d at 899. We must resolve any evidentiary inconsistencies in favor of the judgment. *Id.*

We measure the legal sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Coleman v. State*, 131 S.W.3d 303, 314 (Tex. App.—Corpus Christi 2004, pet. ref'd) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). A person commits the offense of failure to comply with registration requirements if the person "is required to register and fails to comply with any requirement" of chapter 62. TEX. CODE CRIM. PROC. ANN. art. 62.102 (West 2006).

Under chapter 62

> [a] person who has a reportable conviction or adjudication or who is required to register as a condition of parole, release to mandatory supervision, or community supervision shall register or, if the person is a person for whom registration is completed under this chapter, verify registration as provided by Subsection (f), with the local law enforcement authority in any municipality where the person resides or intends to reside for more than seven days. If the person does not reside or intend to reside in a municipality, the person shall register or verify registration in any county where the person resides or intends to reside for more than seven days. The person shall satisfy the requirements of this subsection not later than the later of:
>
> > (1)    the seventh day after the person's arrival in the municipality or county; or
> >
> > (2)    the first date the local law enforcement authority of the municipality or county by policy allows the person to register or verify registration, as applicable.

*Id.* art. 62.051(a). Therefore, under a hypothetically correct jury charge, the State had to prove beyond a reasonable doubt that Lee was required to comply with the registration requirements of chapter 62 of the code of criminal procedure, i.e., he was a sex offender, and that he intentionally, knowingly, or recklessly failed to report to local law enforcement within the allotted time. *See id.* art. 62.051(a); TEX. PENAL CODE ANN. §

11

6.02(b)–(c) (West 2011) (establishing that if an offense "does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element" and that "intent, knowledge, or recklessness suffices to establish criminal responsibility").

Lee first argues that there was no evidence that he failed to register and the evidence merely showed that he failed to verify his registration. However, Wilson testified registration of sex offenders begins in prison, but the process is not completed until that offender reports to the designated local law enforcement agency. Wilson stated that although Lee began the registration process with her on March 12, 2010, Lee was not officially registered on that date. State's exhibit 1, the CR-35 form, clearly states that the sex offender, Lee, must "complete" the registration process with the Montgomery County Sheriff's Office. Lee's witness, Sonsel, affirmed that registration is not completed in prison and only completed once the sex offender reports to local law enforcement. And when asked if a person who has not registered with local law enforcement has technically registered as a sex offender, Sonsel replied "no."

Chapter 62 requires the sex offender to register with the local law enforcement authority in any municipality where the person resides or intends to reside for more than seven days unless that person has completed the registration process. *See* TEX. CODE CRIM. PROC. ANN. art. 62.051(a). Here, the evidence showed that Lee had not completed the registration process and was, thus, required to register with the local law enforcement authority. The evidence showed that he did not do so. Therefore, viewing the evidence in the light most favorable to the verdict, we conclude that a rational fact-finder could have found beyond a reasonable doubt that Lee failed to register as a sex

offender as opposed to merely failing to verify his registration. *See Jackson*, 443 U.S. at 319; *see also Brooks*, 323 S.W.3d at 898–99. We overrule Lee's first issue.

### III.    MISTAKE OF FACT

By his second issue, Lee contends that the trial court erred by not including his requested mistake of fact instruction in the jury charge and that he suffered some harm from this error. Specifically, Lee argues that there was evidence presented that he reasonably believed that his registration appointment was on May 13, 2010. Lee further argues that he was harmed by this error.

### A.    Applicable Law and Standard of Review

"An accused has the right to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the defense." *Madrigal v. State*, 347 S.W.3d 809, 817 (Tex. App.—Corpus Christi 2011, pet. ref'd) (quoting *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996)). The trial court must submit a defensive theory to the jury if the evidence raises it and a charge is properly requested. *Id.* We view the evidence in the light most favorable to the defense when determining whether a defensive theory has been raised. *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999).

A defendant is entitled to a mistake of fact instruction when there is evidence that he mistakenly "formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for the commission of the offense." TEX. PENAL CODE ANN. § 8.02 (West 2011); *Granger*, 3 S.W.3d at 41 (citing *Miller v. State*, 815 S.W.2d 582, 585 (Tex. Crim. App. 1991)). Therefore, in the instant case, the issue

13

before the trial court was whether Lee's purported belief that his appointment was on May 13, 2010 and that he had completed his registration prior to being released, if accepted as true, negated the State's allegation that he intentionally, knowingly, or recklessly failed to register as a sex offender. *See Granger*, 3 S.W.3d at 41.

A person acts intentionally when it is his conscious objective or desire to cause the result; he acts knowingly with respect to the nature of his conduct when he is aware that his conduct is reasonably certain to cause the result. TEX. PENAL CODE ANN. § 6.03(a), (b) (West 2011).

> A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

*Id.* § 6.03(c).

If a party timely objects to an error in the charge, as in this case, reversal is required if the error was "calculated to injure the rights of [the] defendant." *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994) (citing *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984)). The accused must merely show that he suffered some harm from the error. *Id.* Thus, a properly preserved error will require reversal as long as the error is not harmless. *Id.*

## B.    Analysis

In our analysis, we must view the evidence in the light most favorable to the defense in our determination of whether Lee raised the defensive theory of mistake of fact. *See Granger*, 3 S.W.3d at 38. Therefore, we have set out the facts below in that

14

light.  *See id.*  At trial, Lee properly preserved error by objecting to the omission of his requested mistake of fact jury instruction.  Thus, Lee must merely show that he suffered some harm from the alleged error.  *Abdnor*, 871 S.W.2d at 732.

Wallace allowed Lee to reschedule his appointment to register several times. Lee expressed to his parole officer his intention to comply with the registration requirement.  Lee informed Wood that he had rescheduled his registration appointment. After missing the last scheduled appointment, Lee met with Wood and Lee was promptly arrested for failure to register.  Lee attended all of his scheduled appointments with his parole officer and with his therapy group.

Lee is seventy-six years old and has cancer and Hepatitis C.  Lee believed that he had already registered as a sex offender when he was released from prison on March 19, 2010.  Lee believed that his meeting with Wallace was merely for verification purposes and not for the initial registration.  Lee contacted Wallace on March 22, 2010 to schedule an appointment with her.  Wallace told Lee that he needed an ID card with his address before she would arrange a meeting with him.  Lee attempted to acquire the card.

Lee contacted Wallace when he passed his written test for his driver's license and informed her that the receipt had his address.  Wallace asked Lee to come into her office on March 30, 2010 at 1:30 p.m.  Lee had a doctor's appointment that day and called Wallace who allowed Lee to reschedule his appointment.  Lee requested an appointment with Wallace on March 29, 2010 because he was concerned that he had not acquired his blue card.  Wallace would not meet with Lee on that day.  Wallace

15

rescheduled Lee's appointment for April 8, 2010 at 1:00 p.m. Lee thought that was the time Wallace stated, but admitted that he could have been mistaken.

Lee contacted Wallace after Wood told him he was in violation of his parole. Lee asked Wallace to meet with him on April 6, 2010. Wallace refused to meet with Lee on that day. Lee called Wallace on April 8, 2010 at 9:00 a.m. to confirm the 1:00 meeting. Wallace informed Lee that he had missed the meeting at 8:30 a.m. Lee asked Wallace to allow him to come in at that time. Wallace refused. Lee believed that Wallace again rescheduled his appointment for May 13, 2010. Lee had a medical appointment on that day and called Wallace asking her to reschedule the appointment. Wallace told Lee to cancel his medical appointment. Wood told Lee to comply with Wallace's requirements. Lee was arrested on April 23, 2010 when he met with Wood regarding his medication.

Although the evidence clearly established that Lee did not complete his registration within seven days of his release from prison, there was ample evidence that Wallace allowed Lee to reschedule his appointment on several occasions and did not report that Lee had violated the conditions of his probation. There was also evidence that Wallace refused to meet with Lee when he requested such a meeting. Furthermore, article 62.051 states that registration should be completed "not later than the later of" either "the seventh day after the person's arrival in the municipality or county" or "the first date the local law enforcement authority of the municipality or county by policy allows the person to register or verify registration, as applicable." Here, Wallace allowed Lee to reschedule his appointments with her on several dates after Lee's seventh day of release from prison. He was then mistaken about the date and time of his final appointment.

16

Viewing this evidence in the light most favorable to the defense, we conclude that the mistake of fact defense was raised by the evidence. We further conclude that the evidence that Lee thought he had an appointment on May 13, 2010, negated that Lee acted intentionally, knowingly, or recklessly by missing his actual appointment on April 13, 2010.[4] Therefore, the trial court erred by not including Lee's requested mistake of fact jury instruction. *See Montgomery v. State*, 588 S.W.2d 950, 953 (Tex. Crim. App. [Panel Op.] 1979) ("[T]he accused is entitled to an Affirmative submission of every defensive issue raised by the evidence.").

Furthermore, a jury that believed Lee's mistake of fact defense would be obligated to acquit Lee of the charged offense. Tex. Penal Code Ann. § 8.02(a) ("It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense."). However, the jury was not provided the requested instruction to guide it in its determination of Lee's guilt. *See Miller v. State*, 815 S.W.2d 582, 586 (Tex. Crim. App. 1991) (concluding that the appellant suffered some harm because the jury was not given an instruction on the appellant's defensive theory of mistake of fact to guide it in its determination of her guilt). Lee, therefore, suffered some harm as a result of the trial court's erroneous denial of his requested mistake of fact instruction. *See Abdnor*, 871 S.W.2d at 732. We, therefore, sustain Lee's second issue.[5]

---

[4] We note that the State does not contest that Lee negated that he acted intentionally or knowingly. The State merely argues that Lee did not negate that he acted recklessly because he "disregarded the risk" that he was wrong that his appointment with Wallace was rescheduled for May 13, 2010 rather than April 13, 2010.

[5] Having sustained Lee's second issue, we need not address his remaining issues because they are not dispositive of this appeal. *See* TEX. R. APP. P. 47.1.

17

## IV.    CONCLUSION

We reverse the trial court's judgment and remand this cause to the trial court for a new trial consistent with this opinion.

_____
ROGELIO VALDEZ
Chief Justice

Do not Publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
21st day of November, 2012.