**Opinion issued October 24, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-18-00335-CR**

———————————

**AVIS LAVAR KING, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Case No. 17-CR-1219**

---

## MEMORANDUM OPINION

A jury convicted appellant, Avis Lavar King, of evading arrest with a motor

vehicle,[1] found two enhancement paragraphs true, and assessed punishment at 32

years' confinement and a $1,500 fine. In two issues on appeal, appellant contends

---

[1] *See* TEX. PENAL CODE § 38.04(b)(2)(A).

that (1) the trial court erred in refusing to charge the jury on the defense of mistake-of-fact and (2) the evidence is legally insufficient. We affirm.

## BACKGROUND

On May 1, 2017, Joseph Paul Rivera parked his new, red Mercedes outside a doughnut shop in Galveston and went inside. When Rivera left the store, he discovered that his car had been stolen. He called 911 and reported that, based on what someone at the scene had told him, two white men had stolen the car. Rivera believed that there was a second key fob in his glove compartment, which allowed the car to be taken without the keys. He later learned that his car had been in an accident and was a total loss.

R. Hernandez, an investigator for Gulf Coast Bail Bonds, testified that he was traveling on Broadway in Galveston when he saw a red Mercedes back into a pick-up truck at an intersection. The driver of the truck got out to exchange information with the driver of the Mercedes, but the Mercedes driver, a black male, later identified as appellant, sped away. Hernandez flagged down a Galveston Police officer, and, while the officer was turning around, Hernandez followed appellant for a block and a half. The police officer soon caught up, and Hernandez moved aside to let the officer take over the pursuit.

Officer J. Rupert of the Galveston Police Department then began pursuit of appellant. Traffic was heavy, so Rupert activated his lights and sirens. When he was

four or five blocks behind the Mercedes, Rupert noticed that its driver began running stop signs. After appellant had run four or five stop signs without slowing down, Rupert drove one block over, hoping that the Mercedes would "double back." Appellant, as Rupert had hoped, doubled back and Rupert met him head-on. Rupert positioned his patrol car, a Ford Explorer with "Galveston Police" on the side and overhead lights and sirens activated, to block the middle of the street, leaving a small space on either side. Appellant maneuvered the Mercedes around the patrol car and continued at a high rate of speed for another block and a half, before running another stop sign and colliding with a car.

The Mercedes flipped on its side, struck a building and power lines, and landed in a nearby yard. Appellant, the only occupant of the vehicle, was uncooperative with police and would not put his hands behind his back. It took three officers to detain him. The red Mercedes was, in fact, Rivera's car, which had been stolen from the doughnut shop. Whether appellant stole it or received it from the two white males mentioned in the 911 call, is not reflected in the record.

Appellant testified at trial that he had been in the hospital at UTMB on the morning of May 1st and that he was released sometime around noon. Because there was no one to pick him up, appellant began walking. He called his girlfriend from a nearby service station and told her that he was trying to get a ride back to Houston. Appellant testified that he encountered two white men in a red Mercedes at a

3

convenience store and asked them for a ride to Houston. He claimed that the two men then gave him the car, which he drove off in by himself. He claimed that he intended to later return the car to the convenience store, though he did not know the two men.

While driving the Mercedes, appellant testified that he ran into the rear end of a pickup truck. Because the driver of the truck got out and appeared very angry, appellant said that he drove away and the angry man in the truck followed him. When confronted with Officer Rupert's dash-cam video from the ensuing chase, appellant claimed that he never knew that an officer was chasing him, even though the officer's lights and sirens were activated. Appellant thought that the angry man in the pick-up truck was still chasing him and that he was involved in a "road rage" incident.

Appellant testified that it was not until Rupert's marked unit tried to cut him off that he noticed that police were involved. Appellant claimed that when he saw the unit's lights on, he knew that he needed to stop, but, due to his speed, he went around the officer to avoid hitting him. As he did so, appellant collided with another motorist.

## SUFFICIENCY OF THE EVIDENCE

In issue two, appellant contends that "the evidence is insufficient, as a matter of law, to support appellant's conviction for the offense of evading arrest in a motor vehicle." Specifically, appellant argues that "there is no possible way a jury could

determine whether Appellant knew Rupert was pursuing him and trying to detain him; attempting to lawfully arrest him; or that Appellant even knew that Rupert was attempting to arrest or detain him." Although raised as his second issue, we address appellant's sufficiency issue first because in it he seeks an acquittal. *See Price v. State*, 502 S.W.3d 278, 281 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("We address appellant's second issue first because it challenges the sufficiency of the evidence and seeks rendition of a judgment of acquittal.").

*Standard of Review and Applicable Law*

We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the jury's verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Our role is that of a due-process safeguard, ensuring only the rationality of the trier-of-fact's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We give deference to the responsibility of the factfinder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams*, 235 S.W.3d at 750. The jury, as the judge of the facts and credibility of the witnesses, may choose to believe or not to believe the witnesses, or any portion of their testimony. *Sharp v. State*, 707 S.W.2d

611, 614 (Tex. Crim. App. 1986); *Jenkins v. State*, 870 S.W.2d 626, 628 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

A person commits the offense of evading arrest with a motor vehicle if he (1) intentionally flees, (2) from a person he knows to be a police officer attempting lawfully to arrest or detain him, and (3) he uses a vehicle while in flight. *See* TEX. PENAL CODE § 38.04; *Hazkell v. State*, 616 S.W.2d 204, 205 (Tex. Crim. App. 1981); *Redwine v. State*, 305 S.W.3d 360, 362 (Tex. App. —Houston [14th Dist.] 2010, pet ref'd). "A person commits a crime under section 38.04 only if he knows that a police officer is attempting to arrest him but nevertheless refuses to yield to a police show of authority." *Thompson v. State*, 426 S.W.3d 206, 209 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd).

Evidence that a police officer is asserting authority and attempting to arrest or detain an individual includes use of emergency lights and sirens, pointing to a driver to pull the vehicle over, and issuing verbal commands. *Duvall v. State*, 367 S.W.3d 509, 513 (Tex. App.—Texarkana 2012, pet. ref'd). "'[F]leeing' is 'anything less than prompt compliance with an officer's direction to stop,' and 'fleeing slowly is still fleeing.'" *Lopez v. State*, 415 S.W.3d 495, 497 (Tex. App.—San Antonio 2013, no pet.) (quoting *Horne v. State*, 228 S.W.3d 442, 446 (Tex. App.—Texarkana 2007, no pet.) and *Mayfield v. State*, 219 S.W.3d 538, 541 (Tex. App.—Texarkana 2007, no pet.)); *see also Baines v. State*, 418 S.W.3d 663, 670 (Tex. App.—Texarkana

2010, pet. ref'd) ("The relevant inquiry is whether there was an attempt to flee or delay the detention."). Courts may consider speed, distance, and duration of pursuit in determining whether a defendant intentionally fled, but "no particular speed, distance, or duration is required to show the requisite intent if other evidence establishes such intent." *Griego v. State*, 345 S.W.3d 742, 751 (Tex. App.—Amarillo 2011, no pet.); *Mayfield*, 219 S.W.3d at 541 ("The statute does not require high-speed fleeing, or even effectual fleeing. It requires only an attempt to get away from a known officer of the law.").

*Analysis*

Appellant claims the evidence is legally insufficient, arguing that "there is no possible way a jury could determine whether Appellant knew Rupert was pursuing him and trying to detain him; attempting to lawfully arrest him; or that Appellant even knew that Rupert was attempting to arrest or detain him." Thus, appellant challenges only the second element of evading arrest with a motor vehicle, i.e., whether Rupert was a person appellant knew to be a police officer attempting lawfully to arrest or detain him.

Appellant relies on his own testimony that he believed he was being chased by the angry man whose pick-up truck he claimed to have bumped, presumably Hernandez. Even if Hernandez initiated the chase, there was other sufficient evidence from which a rational jury could have concluded beyond a reasonable

7

doubt that appellant did, in fact, know that Rupert was a police officer and was trying to detain him. Rupert testified that, after taking over the chase, he activated his overhead lights and sirens. Though appellant claimed not to have seen or heard them, the jury, having viewed Rupert's dash-cam video, was entitled to disbelieve appellant's testimony. *See Sharp*, 707 S.W.2d at 614 (holding that jury may disbelieve any portion of witness's testimony). Rupert was following appellant in a unit marked "Galveston Police." Rupert testified that there were two points at which appellant should have seen or heard Rupert's pursuit: First, when Rupert was approximately one block from appellant with his lights and sirens activated, and second, when Rupert pulled in front of appellant and appellant drove straight toward him. Even appellant admitted that when he saw Rupert in the road in front of him, "I observed that he wanted me to stop." Even though appellant claimed that he could not stop because of his speed, the jury could have disbelieved his testimony, especially since appellant continued past the officer for another block and a half before running a red light and crashing. *See id.*

Thus, there was sufficient evidence for a rational jury to conclude beyond a reasonable doubt that Officer Rupert was a person appellant knew to be a police officer attempting lawfully to arrest or detain him. *See Williams*, 235 S.W.3d at 750.

We overrule issue two.

## JURY CHARGE ON MISTAKE OF FACT

8

In his first issue, appellant contends the trial court "erred in not allowing the defense of mistake of fact to be included in the jury charge." Specifically, appellant argues that "evidence was adduced at trial that [appellant] did not know that Rupert, a police officer, was indeed attempting to arrest or detain appellant."

*Standard of Review and Applicable Law*

It is a defense that the defendant "through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense." TEX. PENAL CODE § 8.02(a). "Kind of culpability" refers to the mental state required for criminal responsibility. *Celis v. State*, 416 S.W.3d 419, 430–31 (Tex. Crim. App. 2013). Thus, a mistake-of-fact defense turns on the mistaken belief of the defendant, not others, and considers the conduct of others only to the extent that it contributes to the defendant's belief. *Montgomery v. State*, 588 S.W.2d 950, 953 (Tex. Crim. App. [Panel Op.] 1979); *Johnson v. State*, 734 S.W.2d 199, 203–04 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd).

If the evidence raises a mistake-of-fact defense and the defendant requests an instruction, the trial court must instruct the jury on the defense. *Jackson v. State*, 646 S.W.2d 225, 226–27 (Tex. Crim. App. 1983); *Williams v. State*, 930 S.W.2d 898, 902 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd). The trial court must do so regardless of the strength of the evidence. *Anderson v. State*, 11 S.W.3d 369, 372 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). The reasonableness of the

defendant's mistaken belief is a question for the jury. *Granger v. State*, 3 S.W.3d 36, 39–40 (Tex. Crim. App. 1999); *Anderson*, 11 S.W.3d at 372. But, if the evidence, when viewed in a light most favorable to the defendant, does not establish a mistake-of-fact defense, an instruction is not required. *Id.*

*Analysis*

Appellant contends that he was entitled to a mistake-of-fact instruction because he "asserted throughout his testimony he did not know a police officer was pursuing him" and that "he thought a civilian, Hernandez, was angry and was attempting to stop him and commit a road rage act as a result of [appellant] bumping into his truck."

Even if we were to agree that there is a question of fact regarding whether appellant was aware that police were trying to detain him when the chase started, uncontroverted evidence shows that when Rupert pulled in front of him to block the road, appellant was no longer mistaken about the fact that the police wanted to detain him. Testimony on this issue was as follows:

> [Defense Counsel]: You've seen videos here and you've heard testimony. At some point an officer went in pursuit of you. You heard all of that testimony?
>
> [Appellant]: Yes, sir.
>
> [Defense Counsel]: When you were driving away after this bump, what was your intention at that time?
>
> [Appellant]: To get away from the gentleman that was chasing me.

10

[Defense Counsel]: Did you have any idea that the police were after you?

[Appellant]: No, sir. No, sir. *Only time I had that idea was whenever I seen the officer try to cut me off and to avoid hitting him I went around*. That's the only thing I can think of.

\* \* \* \*

[Defense Counsel]: You just mentioned to the jury that you actually did see an officer head on?

[Appellant]: Yes, sir.

[Defense Counsel]: What was your thought in terms of seeing that officer facing you?

[Appellant]: Well, I was trying to avoid hitting him. That's why I went around.

\* \* \* \*

[Defense Counsel]: What kind of signals, if any, did you see from the police car when it's coming towards you?

[Appellant]: I really don't recall. I know his lights were on. That's pretty much it.

[Defense Counsel]: And when you say "his lights were on"—

[Appellant]: The top, the top lights, yes, sir.

[Defense Counsel]: Did he have a spotlight on?

[Appellant]: I can't recall.

[Defense Counsel]: Did you have a siren going?

[Appellant]: Yes, I believe the siren was going.

11

[Defense Counsel]: Did he have any kind of microphone or bullhorn?

[Appellant]: No, sir.

[Defense Counsel]: Did you—from what you observed, did you think he wanted you to stop?

[Appellant]: Well, yeah, I observed that he wanted me to stop, but I was going so fast and as soon as he came and hit the corner I was like already there so I went around him.

Even if appellant initially believed that the person chasing him through the neighborhood was not a police officer, appellant certainly knew, and testified that he knew, that when the officer pulled in front of him with lights and sirens on, the police officer wanted him to stop. Whether appellant was able to stop does not go to a mistake-of-fact defense, but was a credibility question for the jury to decide. But, appellant, by his own testimony, was aware at this point in the chase that a police officer was trying to detain him. *See Witherspoon v. State*, 671 S.W.2d 143, 144 (Tex. App.—Houston [1st Dist.] 1984, no pet.) (holding that, even though appellant may have initially entered apartment by mistake, he was not entitled to mistake-of-fact instruction when he left and re-entered apartment, raping victim inside). As such, the trial court did not err in denying appellant a mistake-of-fact charge.

We overrule issue one.

## CONCLUSION

12

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Keyes and Landau.

Do not publish. TEX. R. APP. P. 47.2(b).