

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| GREGORY ALAN GAUER, | § | |
| | | No. 08-15-00118-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 82nd District Court |
| THE STATE OF TEXAS, | § | |
| | | of Falls County, Texas |
| Appellee. | § | |
| | | (TC# 9395) |
| | § | |

## O P I N I O N

Appellant was charged by indictment with one count of theft. At trial, he raised a "mistake of fact" defense, contending that he had a reasonable belief that he had been given permission to take the property from someone he believed had either actual or apparent authority to act on behalf of the property's owner. The jury rejected his defense and convicted Appellant as charged in the indictment, and assessed punishment at two years in a state jail facility. In his sole issue on appeal, Appellant contends that the jury's verdict was not supported by legally sufficient evidence, claiming that no rational juror could have rejected his "mistake of fact" defense. We affirm.

## FACTUAL SUMMARY

In April of 2014, Connie LaFrance was living in a home in Golinda, Texas, located next door to property owned by Rodney Green, where the alleged theft took place. Green's house had partially burned to the ground in December of 2013, and had been sitting vacant while Green was

waiting to settle his claim with his insurance company. Green, who was living in Waxahachie at the time, testified that he would periodically return to Golinda to check on the property, and that he had placed a safety fence around the property as well as "no trespassing" signs on the property.[1] Green also testified that he had entered into a contract for the sale of the property to LaFrance in January of 2014, but at the time of the alleged offense, he was still the owner of the property.

On the morning of April 9, 2014, Connie LaFrance, was inside her home when she heard a noise on Green's property, which sounded like "hammering" or "banging." When she looked outside, she noticed a man, whom she later identified as Appellant, "bent down and working on the air conditioner" in Green's "burned-down house." LaFrance went outside to investigate and observed a second man, later identified as Appellant's co-defendant, Jerod Yepma, who came from behind the fireplace in the back of the house, with tools in his hand, where another air conditioning unit was located. LaFrance confronted Yepma, stating: "You're not supposed to be over there." LaFrance recalled that Yepma asked her who she was and if she were the owner of the property. In reply, LaFrance stated: "No, but I have a contract on the property."

At that point, LaFrance observed Appellant "come around the corner," holding what appeared to be "items that he had taken off the air conditioner." Although the two men admittedly did not say anything threatening to her, LaFrance testified that she became "scared," in part because of the "look" they gave her, and because they were carrying large wrenches, which she believed could have been used as weapons. Because of her fear, LaFrance told Yepma: "Okay.

---

[1] Appellant's co-defendant testified at trial that he did not recall seeing any "no trespassing" signs on the property at the time the theft took place; however, LaFrance and a sheriff's deputy who investigated the offense both testified that the signs were visible on the property at that time. At trial, the State also presented photographs of the no trespassing signs that the officer took during his investigation.

2

Go ahead and take what you want." According to LaFrance, she had no direct communications with Appellant.

LaFrance left Green's property and returned to her home, where she called her husband, who then called 911 on her behalf. A few minutes later, LaFrance drove away from her home, but parked her car on a nearby street where she could still see the two men. While she was parked, she observed a white car, being driven by a female, later identified as Appellant's sister-in-law, pull up to Green's property, and observed the two men "loading stuff" into the car, which she believed to be "parts off the air conditioner." LaFrance was also able to observe the license plate of the vehicle as it drove off.

During this time, LaFrance was on the phone with a 911 operator who had been contacted by LaFrance's husband, and she was able to provide the 911 operator with a description of the car, as well its location and the direction it was going. LaFrance followed the car for a short distance until law enforcement officers pulled the car over, and arrested its occupants, including Appellant. The arresting officers found "several air-conditioning compressors, copper tubing [and] copper wire" in the trunk of the vehicle, as well as "copper," a portable drill, and gloves on the floorboard of the back seat.[2] The officers recorded their encounter with the individuals on their dash cam; the recording, which was played for the jury at trial, revealed that the two men admitted to taking the copper and the air compressors from the "burned house," but asserted that they had had permission from a "neighbor" to take the items.

---

[2] One of the arresting officers also testified, without objection, regarding the value of the property found in the car.

Following the arrest, one of the officers testified that LaFrance informed him that she had authority from Green to "watch over the property."[3]   However, at trial, both LaFrance and Green denied that LaFrance had any such authority, and further denied that she had the right to exercise any control over the property.

## Appellant's Defense

At the close of the State's evidence, Appellant's attorney moved for an "instructed verdict of not guilty," arguing that the State had failed to prove beyond a reasonable doubt that Appellant was not laboring under a "mistake of fact" when he believed that LaFrance had the authority to give consent to take the items from Green's property.   The trial court denied the motion, and Appellant thereafter presented the testimony of his co-defendant, Jerod Yepma, who had previously pled guilty to the theft and had been placed on deferred adjudication probation.   Yepma testified that he had a friend living in the area near Green's property, and that prior to the day of the alleged offense, he and Appellant had noticed that Green's "burned-out house" had been sitting vacant for quite some time, and that it had copper wiring running through it, which he believed had value as "scrap."   He claimed that he and Appellant walked together to Green's house from the friend's house that morning, and knocked on LaFrance's door to seek permission to take some copper from Green's house, explaining that he believed the two properties were so close together that they were likely owned by the same person.   Yepma recalled that after "banging" on her front door several times, LaFrance walked out of the back of her house to speak with them.   According to Yepma, he asked LaFrance for permission to take some copper from the property to sell as

---

[3] Although this same officer spoke with Green after the offense occurred, he did not ask Green if he had given LaFrance permission to watch over the property.

4

"scrap," in order to get some "[g]as and cigarette money," and she replied as follows: "Yeah, I guess so. Just get what you need this one time and leave and don't come back."[4] Although he never indicated that LaFrance identified herself as having any ownership or other possessory rights over Green's property, he believed LaFrance had given them "consent to take the property" at that time. Yepma claimed that he did not do anything that could have been considered to be "intimidating or coercive or threatening" to obtain her consent. In addition, he claimed that neither he nor Appellant had any tools with them when they arrived at Green's property, and that they removed the copper from the air conditioning units with their hands, claiming that everything was so "busted up" at the house that the wire "broke pretty easy." According to Yepma, the tools found in the vehicle at the time of the arrest belonged to Appellant's brother, who owned the vehicle.

Appellant did not take the stand, but his attorney argued during both his opening statement and his closing arguments that Appellant and his codefendant had "permission to take what they took" from LaFrance, and that LaFrance either did in fact have the actual authority to grant them permission to take the property, as she was the "caretaker" of Green's property, or that Appellant was laboring under a mistake of fact and reasonably believed that she had the authority to do so. Counsel further argued that any such permission was given without any deception, threats or coercion, and that Appellant therefore did not take the property without the effective consent of the owner, as required for a theft conviction.

**The Jury's Verdict**

---

[4] Although Yepma claimed that he received LaFrance's "consent" to take the copper before he and Appellant began trying to extract the copper from the house, LaFrance was certain that she had no contact with the two men until after they were already on the property dismantling the air conditioning units.

As requested by defense counsel, the trial court provided the jury with an instruction on Appellant's "mistake of fact" defense, informing the jury that if it found Appellant had "acted under a mistake of fact, that is, a reasonable belief that he had consent to take the property, or if you have a reasonable doubt thereof, you will find the Defendant not guilty." The jury, however, impliedly rejected that defense, and found Appellant guilty of theft, as charged in the indictment, and assessed punishment at two years in a state jail facility, together with a $10,000 fine. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

Appellant contends that the evidence was not legally sufficient to support a finding that he took the copper from Green's property without the effective consent of the owner, arguing two related points: (1) that the undisputed evidence established that LaFrance was a "special owner" of Green's property who had actual authority to grant him permission to take the property; or (2) that he was laboring under a reasonable, albeit mistaken, belief that LaFrance had the authority to grant him permission, and that no rational juror could have rejected his "mistake of fact" defense.

### Standard of Review

The legal-sufficiency standard is the only standard a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *See Brooks v. State,* 323 S.W.3d 893, 895 (Tex.Crim.App. 2010); *see also Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979). In a legal sufficiency analysis, we view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *In re R.R.*, 420 S.W.3d 301, 303

6

(Tex. App.—El Paso 2013, no pet.) (citing *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2788–89); *Burden v. State,* 55 S.W.3d 608, 612 (Tex.Crim.App. 2001)).   On review, we do not resolve any conflicts of fact or re-evaluate the weight and credibility of the evidence.   *Id.* (citing *King v. State,* 29 S.W.3d 556, 562 (Tex.Crim.App. 2000); *In re H.G.G.D.,* 310 S.W.3d at 46). Instead, our duty is to determine whether the explicit and implicit findings of fact made by the trier of fact are rational, by viewing all the evidence admitted at trial in the light most favorable to the verdict.   *Id.* (citing *Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App. 1992)).   If the record supports conflicting inferences, we presume that the fact finder resolved any inconsistencies in favor of the verdict and defer to that determination.   *In re J.R.C.S.,* 393 S.W.3d 903, 909–10 (Tex. App.—El Paso 2012, no pet.) (citing *Clayton v. State,* 235 S.W.3d 772, 778 (Tex.Crim.App. 2007); *Curry v. State,* 30 S.W.3d 394, 406 (Tex.Crim.App. 2000)).   The standard is the same for both direct and circumstantial evidence cases.   *Kutzner v. State,* 994 S.W.2d 180, 184 (Tex.Crim.App. 1999).

Although we consider all of the evidence presented at trial, we do not reevaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder.   *See Williams v. State,* 235 S.W.3d 742, 750 (Tex.Crim.App. 2007); *see also Brooks*, 323 S.W.3d at 899; *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000); *see also Jones v. State,* 944 S.W.2d 642, 647 (Tex.Crim.App. 1996) (the jury is the exclusive judge of the credibility of witnesses and the weight to be given their testimony).

### Actual Authority to Consent?

Appellant first contends that, based on the undisputed evidence presented at trial, no rational jury could have concluded that LaFrance did not have the authority to give consent to Appellant to take the items from Green's property, and that the undisputed evidence instead

7

established her to be a "special owner" of the property who had the right to give consent on Green's behalf.   We disagree.

To commit theft, a person must have "unlawfully appropriate[d] property with intent to deprive the owner of property," and without the owner's "effective consent."   TEX. PENAL CODE ANN. § 31.03(a)(b) (West Supp. 2016).   The Code defines "effective consent" as consent by a "person legally authorized to act for the owner."   TEX. PENAL CODE ANN. § 1.07(a)(19) (West Supp. 2016).   Conversely, the Code also expressly provides that consent is not effective if it was given by a "person the actor knows is not legally authorized to act for the owner[.]"   TEX. PENAL CODE ANN. § 1.07(a)(19) (B) (West Supp. 2016).

In turn, the Penal Code defines the term, "owner," as a "person who . . . has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor[.]"   TEX. PENAL CODE ANN. § 1.07(a)(35) (West Supp. 2016).   Further, "possession" is defined in the Code as the "actual care, custody, control, or management" of the property.   TEX. PENAL CODE ANN. § 1.07(a)(39) (West Supp. 2016); *see also Villalobos v. State*, 951 S.W.2d 232, 234 (Tex. App.—El Paso 1997, no pet.) (recognizing that "possession" under the Penal Code means "actual care, custody, control, or management"); *accord Lee v. State*, 442 S.W.3d 569, 580 (Tex. App.—San Antonio 2014, no pet.).

The Court of Criminal Appeals has recognized that the statutory definition of owner is "expansive" and includes a "special owner," which it defined as any individual having "custody or control of property belonging to another person."   *See, e.g., Garza v. State*, 344 S.W.3d 409, 412-13 (Tex. Crim. App. 2011) (determining that it was proper for the State to have alleged in its indictment that a computer company's employee was the "owner" of stolen property, as a

8

company's employee can be considered a "special owner" of the property under the theft statute) (citing *Harrell v. State*, 852 S.W.2d 521, 523 (Tex. Crim. App. 1993); *see also Villalobos,* 951 S.W.2d at 234 (recognizing that the State could properly allege that the county judge was the "special owner" of county property allegedly taken by the defendant, as the county judge had a greater right of possession to the property than the defendant).[5]   Therefore, the State is allowed to allege and prove ownership in a "special owner" of property in a theft case, i.e., an individual who has care, custody and control of the property at the time of the alleged theft.   *See, e.g.*, *Bebout v. State*, 418 S.W.2d 685, 686-87 (Tex. Crim. App (1967) (where owners of home testified that they left their employees in complete "charge of the house and everything that was in it" in the absence, the State properly treated the employees as "special owners" of the home for purposes of charging defendant with theft of property from the home); *see also Gasery v. State*, 474 S.W.2d 201, 202 (Tex. Crim. App. 1971) (concluding that the State properly alleged that a pharmacist who had actual care, control and management of a pharmacy, was the "owner" of property for purposes of charging defendant with burglary).

In support of his argument that LaFrance was a "special owner" of the property who had the authority to consent to the appropriation, Appellant relies primarily on the case of *Pearce v. State*, 98 S.W. 861, 862 (Tex. Crim. App. 1906).   *Pearce* is inapposite.   There, the defendant was charged with theft of a horse, and the charging document stated that the foreman of the ranch was the owner of the horse.   However, on the day in question, the foreman was absent, and the undisputed evidence demonstrated that the defendant took the horse with the consent of another

---

[5] The jury charge correctly reflected all of the elements of theft, and provided the statutory definition of the term "owner," as being a "person who has title to the property, possession of the property, or a greater right to possession of the property than the person charged."   It further informed the jury that "[p]ossession means actual care, custody, control or management of the property."

9

employee who was in charge of the ranch that day. Under those conditions, the court held that the defendant could not be found guilty of theft, as the undisputed evidence revealed that he had the express consent of an individual who had the actual care, custody and control of the horse at that time. Instead, the court concluded that he could have only been convicted of embezzlement, as the evidence indicated that the individual who provided consent was acting in concert with the defendant in giving him permission to take the horse. *Pearce*, 98 S.W. at 862.

In seeking to analogize case to the facts in *Pearce*, Appellant relies primarily on the testimony of the officer who investigated the incident, Chief Deputy Kenneth Vanek of the Falls County Sheriff's Department, who testified that LaFrance had advised him during an interview that Green had "pretty much given [her] permission to watch over the property" in his absence. At trial, however, Green denied that he had hired LaFrance to keep an eye on his property, and that he did not give LaFrance or anyone else the authority "to do anything with that property" or to "act in [his] stead" with regard to the property. LaFrance also testified that she did not believe she had any control over the property.

We do not believe the fact that LaFrance had signed a contract to purchase the property gave her any superior rights of possession or control. Appellant has not cited any authority, nor are we aware of any, that would automatically provide an individual who has signed a contract for the purchase of real property with the right to possess or control the property before title has passed, absent any special agreement between the parties. At trial, there was no evidence that the parties' contract provided LaFrance rights to possession or control prior to passage of title; to the contrary, both Green and LaFrance testified that LaFrance had no such right.

10

Accordingly, a rational jury could have concluded, based on the evidence presented at trial, that LaFrance had no actual control over Green's property or any right to possession of the property, and that she was therefore not in fact a "special owner" who had the authority to give Appellant consent to appropriate the items from Green's property. *See generally Saxton v. State,* 804 S.W.2d 910, 914 (Tex. Crim. App. 1991) (credibility determinations are within the sole province of the jury, and the jury was therefore free to assess the credibility of appellant's defensive evidence and to reject appellant's defense to prosecution based on that assessment); *Winkley v. State,* 123 S.W.3d 707, 712 (Tex. App.—Austin 2003, no pet.) (recognizing that the trier of fact is the exclusive judge of the credibility of witnesses and weight to be given their testimony, and is therefore free to accept or reject evidence presented by the defendant in support of his defense to prosecution) (citing *Mattias v. State,* 731 S.W.2d 936, 940 (Tex.Crim.App. 1987)).

## Apparent Authority to Consent?

Appellant also argues that even if LaFrance was not in fact the "special owner" of Green's property, the undisputed evidence established that he was laboring under a "mistake of fact" regarding her authority, and that the undisputed evidence established that he had a reasonable belief that LaFrance had the "apparent authority" to grant him permission to take Green's property. He then argues that no "rational juror" could have rejected his "mistake of fact" defense. We disagree.

The mistake of fact defense is set forth in section 8.02 of the Texas Penal Code, which provides in relevant part that:

> (a) It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense.

TEX. PENAL.CODE ANN. § 8.02(a) (West 2011).

11

By its very definition, the mistake of fact defense must be based on a "reasonable belief about a matter of fact," and therefore the defense is inapplicable where the "mistaken belief is not reasonable." *See Gant v. State,* 814 S.W.2d 444, 451-52 (Tex. App.—Austin 1991, no pet.); *see also Thompson v. State,* 236 S.W.3d 787, 800 (Tex. Crim. App. 2007) (recognizing that a "mistake must be reasonable for it to constitute a circumstance that exculpates the defendant of the offense charged"); *King v. State,* 919 S.W.2d 819, 821 (Tex. App.—El Paso 1996, no pet.) (the evidence does not raise the issue of mistake of fact unless the defendant, through mistake, formed a reasonable belief about a matter of fact). The Penal Code defines a "reasonable belief" as one that is "held by an ordinary and prudent man in the same circumstances as the actor." TEX. PENAL CODE ANN. § 1.07(a)(42) (West Supp. 2016); *see also In Matter of E.O.E.,* 508 S.W.3d 613, 620 (Tex. App.—El Paso 2016, no pet.) (recognizing that under the Penal Code, a "[r]easonable belief means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor"); *see also Miller v. State,* 666 S.W.2d 564, 566 (Tex. App.—Houston [14th Dist.] 1984, no pet.) (defendant's alleged mistake of fact regarding length of shotgun barrel was not reasonable, where defendant was charged with illegal possession of a shotgun with a barrel length less than 18 inches, and the length of the barrel was "readily discernable by a simple empirical method of measurement that is universally accepted"); *King,* 919 S.W.2d at 821–22) (defendant's mistaken belief that his wife was dead when he choked her was not "reasonable," where his alleged mistake "not only was easily verifiable, but was actually verified to the contrary by the defendant" who testified that his wife had a pulse and was breathing at the time).

Unlike many other statutory defenses, a mistake of fact defense negates an element of the offense, such as the defendant's culpable mental state. *See Celis v. State*, 416 S.W.3d 419, 430-31

12

(Tex. Crim. App. 2013) (mistake of fact defense applies to negate a "culpable mental state" as required for an offense.).

When a defendant comes forward with sufficient evidence that he had a reasonable, albeit, mistaken belief as to a culpable mental state of a particular offense, i.e., a mental state that is an essential element of the offense, a defendant is entitled to an instruction on the "mistake of fact" defense upon request. *See Granger v. State,* 3 S.W.3d 36, 41 (Tex.Crim.App. 1999) (defendant who was accused of murder for shooting at a car causing the victim's death was entitled to "mistake of fact" instruction where he advised police that he did not intend to cause the victim's death as he did not know the victim was in a vehicle at the time he fired the shots); *Montgomery v. State*, 588 S.W.2d 950, 953 (Tex. Crim. App. 1979) (the testimony raised the issue of whether the defendant "through mistake formed a reasonable belief that he was acting on instructions from a law enforcement officer that would negate the culpability required for aggravated robbery, and the jury should have been charged on the issue"). In addition, if the evidence presented to the jury raises a fact question as to whether the defendant had a reasonable belief to support a "mistake of fact" defense, the defendant is not only entitled to an instruction on the defense, but the State has the burden of disproving the defense beyond a reasonable doubt. *See, e.g.*, *In re S.S.,* 167 S.W.3d 108, 112–14 (Tex. App.—Waco 2005, no pet.) (State met its burden of disproving the defense where it presented sufficient evidence disproving juvenile's mistake-of-fact defense in trespass case); *Bruno v. State,* 812 S.W.2d 56, 59–60 (Tex. App.—Houston [14th Dist.] 1991), *aff'd,* 845 S.W.2d 910, 912 (Tex.Crim.App. 1993) (trial court properly instructed jury that the State had the burden of disproving defendant's mistake of fact defense beyond a reasonable doubt where defendant claimed that he mistakenly believed that he had consent to operate the victim's vehicle); *Winkley v. State,* 123

13

S.W.3d 707, 712 (Tex. App.—Austin 2003, no pet.) (evidence was sufficient to support finding that the State disproved the defendant's mistake of fact defense beyond a reasonable doubt, where defendant, who was accused of trespass, claimed she had a mistaken belief that she had permission to enter the victim's property). As with any defense, if there is a reasonable doubt with respect to a mistake of fact, the accused must be acquitted. *Winkley,* 123 S.W.3d at 712 (citing TEX. PENAL CODE ANN. § 2.03(d) (West 2003)); *see generally Zuliani v. State,* 97 S.W.3d 589, 595 (Tex.Crim.App. 2003) (State has the burden of providing its case beyond a reasonable doubt when confronted with a defense to prosecution) (citing *Saxton v. State,* 804 S.W.2d 910, 913-14 (Tex.Crim.App. 1991)).

The trial court properly instructed the jury regarding Appellant's mistake of fact defense, and Appellant does not contend that those instructions were improper.[6] He does contend that the State failed to disprove his defense beyond a reasonable doubt, and that no rational juror could have rejected his defense. We disagree.

Appellant did not testify at trial regarding his belief that LaFrance had apparent authority to grant him permission to take the copper. The only evidence necessarily must have come from the testimony of either LaFrance and Yepma. We first examine LaFrance's testimony.

LaFrance testified that Yepma asked her if she were the owner of the property, and she replied that she was not the owner, but that she had a pending "contract" on the property. LaFrance emphasized that she had no direct communications with Appellant, and because Appellant did not

---

[6] The trial court provided a detailed and correct instruction on Appellant's "mistake of fact" defense as requested, explaining that it is a "defense to prosecution that a person through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense," and that "[a] reasonable belief means a belief that would be held by an ordinary and prudent man in the same or similar -- same circumstances as the Defendant." In addition, the charge stated that if the jury found from the evidence that when Appellant "took the property in question he acted under a mistake of fact, that is, a reasonable belief that he had consent to take the property, or if you have a reasonable doubt thereof, you will find the Defendant not guilty."

14

testify at trial, it is unclear whether Appellant actually heard LaFrance make that statement and/or how he may have interpreted the statement. Significantly, we note that the "mistake of fact defense ... is based on the mistaken belief of the accused, and it looks to the conduct of others only to the extent that any such conduct contributes to the mistaken belief." *See, e.g., Montgomery,* 588 S.W.2d at 953; *Lasker v. State,* 573 S.W.2d 539, 542 (Tex.Crim.App. [Panel Op.] 1978) (it is the defendant, rather than a third person, who must labor under the mistake of fact); *In re S.S.,* 167 S.W.3d at 112 (applying principle in juvenile adjudication case).

Where, as here, a defendant does not testify at trial, the question of what the defendant knew or believed is often a matter of mere conjecture. *Johnson v. State,* 635 S.W.2d 564, 566 (Tex. App.—Houston [14th Dist.] 1982, no pet.) (trial court properly refused to provide instruction on mistake of fact defense where defendant, who was charged with unauthorized use of a motor vehicle, did not testify at trial regarding whether he knew the vehicle was stolen); *In re S.S.,* 167 S.W.3d at 114 (where juvenile alleged to have trespassed, produced evidence that his aunt believed he had permission to be on the property, but presented no evidence that the juvenile himself believed he had permission, the jury was free to reject his mistake of fact defense); *Wages v. State,* 703 S.W.2d 736, 739–40 (Tex. App.—Houston [14th Dist.] 1985, pet. dism'd) (where defendant, who was accused of passing worthless checks, did not testify at trial, the question of whether she reasonably believed the account on which she wrote the checks had sufficient funds was a matter of "pure conjecture," and therefore, the evidence was insufficient to support a mistake of fact instruction).

Even if we were to assume that Appellant heard LaFrance's statement, the jury was free to determine that her statement, standing alone, would not have caused a reasonable person to believe that she had the apparent authority to grant permission to appropriate Green's property. The fact

15

that an individual has a pending contract to purchase property does not automatically accord any rights of possession or control, and there is no evidence to indicate that LaFrance advised either Yepma or Appellant that she had any superior right to control or possess the property as the result of her contract.

Yepma's testimony is also of no help to Appellant. Yepma testified that he believed LaFrance owned Green's house simply because Green's house was in close proximity to LaFrance's house. This does not provide any insight into whether Appellant shared this same belief, as once again, Appellant failed to testify at trial, and therefore, what he may or may not have believed with regard to ownership is a matter of conjecture.

A rational jury could have found that Yepma's assumption that the two houses were owned by the same person to be unjustified, particularly since the State presented evidence, including photographs and La France's testimony, indicating that a privacy fence separated the two properties at the front, thereby indicating that the two houses were located on two separate lots.[7] Although Yepma testified that LaFrance gave him permission to take the items from Green's property after he knocked on her door, missing from his testimony was any indication that LaFrance ever told him that she owned the property, or that she had any authority to provide him with any such permission.

Based on the evidence presented, a rational jury could have concluded, beyond a reasonable doubt, that Appellant did *not* have a reasonable belief that LaFrance had apparent authority to grant him permission to take the items from Green's property, and therefore could have rejected his mistake of fact defense. *See generally Winkley v. State,* 123 S.W.3d 707, 710-12 (Tex. App.—

---

[7] Yepma testified that he believed there may have been a fence around the property at some time, but claimed that it appeared to have fallen down onto the driveway at the time of the alleged theft.

16

Austin 2003, no pet.) (where the evidence was conflicting on whether son-in-law of the owner of property gave the defendant permission to enter his father-in-law's property to take equipment, a reasonable trier of fact could have determined that the State disproved the defendant's mistake of fact defense beyond a reasonable doubt); *see also Higginbotham v. State*, 356 S.W.3d 584, 590 (Tex. App.—Texarkana 2011, pet. ref'd) (a rational juror could have concluded beyond a reasonable doubt that the defendant, who was accused of theft, did not possess the stolen property with the owner's effective consent).

### **Consent?**

And finally, the State argues that even if the jury had concluded that Appellant had a reasonable belief that LaFrance had the apparent authority to grant him permission to appropriate items from Green's property, the jury could have concluded, based on the evidence presented at trial, that LaFrance's alleged "consent" was given as the result of either coercion or threat of force, and that it was therefore not effective consent.[8]  We agree.

The Penal Code expressly provides that consent to appropriate property is not effective if it is "induced by deception or coercion" or if it was "given solely to detect the commission of an offense[.]"  TEX. PENAL CODE ANN. § 31.01(3)(A)(D) (West Supp. 2016).  In turn, coercion is statutorily defined, in pertinent part, as a "threat," however communicated to "commit an offense" or to "inflict bodily injury in the future on the person threatened[.]"  TEX. PENAL CODE ANN. § 1.07(a)(9)(A)(B) (West Supp. 2016).  Similarly, the Code provides that consent to an offense in general is not effective if it is induced by "force, threat, or fraud," or if it is "given solely to detect the commission of an offense."  TEX. PENAL CODE ANN. § 1.07(a)(19)(A)(D) (West Supp. 2016);

---

[8] Appellant provided no countervailing argument to this point.

17

*see generally Gordon v. State*, 633 S.W.2d 872, 875 (Tex. Crim. App. 1982) (where evidence supported a finding that defendant obtained consent to enter victim's home under false pretenses, the trial court properly denied the defense's motion for directed verdict).

The State maintains that the trial court properly instructed the jury on this issue, and argues that a rational jury could have concluded that LaFrance's "consent" was not in fact freely given under the circumstances.   LaFrance testified that Yepma did not seek permission to take the items from Green's property until after he and Appellant had already started dismantling the air conditioning units and until she went outside to confront them.   LaFrance was justifiably concerned that she may have stumbled upon a crime in progress, and combined with her fear that the two men had large tools that could have been used against her as a weapon, a rational jury could have concluded that her statement indicating her consent to take the property was provided only as a means of placating the two men until she could return to the safety of her home to seek assistance.

A rational jury could have inferred from this evidence that LaFrance's "consent" was the result of coercion, threat of force, and/or was given in order to detect the commission of a crime. *See generally Ellis v. State,* 726 S.W.2d 39, 40–41 (Tex. Crim. App. 1986) (jury could have reasonably inferred from evidence presented at trial that the victim did not provide effective consent for him to enter her apartment and that his entry was instead "induced by fraud or force"); *Gordon v. State,* 633 S.W.2d 872, 874–75 (Tex.Crim.App. 1982) (effective consent is not present when defendant gained entrance to victim's home under pretext of wanting to use the phone); *see also Gardner v. State*, 306 S.W.3d 274, 287–88 (Tex. Crim. App. 2009) (recognizing that a jury could reasonably infer, from the totality of the circumstances, that victim did not give defendant

18

voluntary consent to enter her home). We conclude the State not only presented sufficient evidence from which a jury could have decided beyond a reasonable doubt that Appellant did not have the effective consent of the owner to take the property in question, but that it also disproved Appellant's "mistake of fact" defense beyond a reasonable doubt. We overrule the sole point and affirm the trial court's judgment.


                                        ANN CRAWFORD McCLURE, Chief Justice
April 28, 2017

Before McClure, C.J., Rodriguez, and Hughes, JJ.
Hughes, J., not participating

(Do Not Publish)

19